

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re | |
|-------|----------------|
| | 2011 TSPR 196 |
| | |
| | 183 DPR ____ |
| Jorge Gordon Menéndez | |

Número del Caso: CP-2008-9

Fecha: 6 de diciembre de 2011

Oficina del Procurador General:

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar

Abogado de la Parte Peticionaria:

      Lcda. Sylvia Juarbe

Materia: Conducta Profesional- La suspensión será efectiva el 15 de diciembre de 2011 fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jorge Gordon Menéndez

CP-2008-09

*PER CURIAM*

En San Juan, Puerto Rico, a 6 de diciembre de 2011.

Una vez más nos vemos obligados a acentuar las obligaciones que todos los miembros de la profesión jurídica le deben a aquellas personas que representan legalmente. "Hacer honor a la confianza… constituye, así, la piedra angular de los deberes que el abogado debe cumplir en su relación con un cliente. Pero, ¿confianza en qué? Surgen entonces los deberes implícitos en aquél: absoluta lealtad, honradez, diligencia y competencia profesional". S. Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, Publicaciones J.T.S., (2010), pág. 175.

I

El Lcdo. Jorge Gordon Menéndez fue admitido al ejercicio de la abogacía el 18 de marzo de 1994. En sus diecisiete años de práctica en esta profesión, ha sido objeto de dos suspensiones del ejercicio de la abogacía. Véanse, In re Gordon Menéndez I, 150 D.P.R. 119 (2000) (Violación del Canon 18 de los de Ética Profesional, 4 L.P.R.A. Ap. IX)(*representó de forma negligente a sus clientes en un asunto que le fue encomendado*); In re Gordon Menéndez I, 171 D.P.R. 210 (2007) (Violación del Canon 38 de los de Ética Profesional, supra) (*mientras estaba suspendido de la práctica de la profesión actuó de manera tal que daba la impresión de estar ejerciendo la profesión*).

Los hechos que dan origen a esta nueva queja surgen luego de que el Sr. Abraham P. Anhang, presentara ante este Tribunal una querella contra el licenciado Gordon Menéndez por violación al Canon 21 de los de Ética Profesional, supra. En síntesis, la queja se basó en la representación simultánea, en claro conflicto de intereses, que el querellado realizó de varias partes en controversia en el sonado caso del inversionista canadiense, Adam Joel Anhang Uster. Este fue brutalmente asesinado en la madrugada del 23 de septiembre de 2003, en el Viejo San Juan. En dicho incidente también resultó herida la viuda del señor Anhang, la Sra. Áurea Vázquez Rijos.

Según relató el señor Anhang en su querella, la señora Vázquez Rijos, quien estaba representada en ese entonces por el licenciado Gordon Menéndez, rehusó ser entrevistada en varias ocasiones por las autoridades con relación al asesinato de su esposo. Específicamente, el licenciado Gordon Menéndez recibió en más de una ocasión las citaciones que se le cursaron a la señora Vázquez Rijos para que testificara sobre lo ocurrido y también presentó mociones para excusar su comparecencia a las citaciones efectuadas.

Mientras esto ocurría, el licenciado Gordon Menéndez también asumió la representación legal del joven Jonathan Román Rivera, acusado del asesinato del señor Anhang Uster. El Lcdo. Gordon Menéndez representó al señor Román Rivera durante su lectura de acusación y la Vista Preliminar. El señor Jonathan Román Rivera fue posteriormente liberado tras estar varios meses encarcelado injustamente. Luego de recibir una confesión, un gran jurado federal emitió acusaciones contra el señor Alex Pabón Colón y la señora Vázquez Rijos por conspirar para el asesinato del señor Anhang Uster. La señora Vázquez Rijos se encuentra en Italia y hasta el momento no ha podido ser extraditada. Al señor Pabón Colón se le encontró culpable en la esfera federal y actualmente cumple una condena por ese asesinato.

Además, el querellante relató que Marcia Vázquez Rijos, hermana de la viuda, compareció al Centro Metropolitano de Investigaciones y Denuncias de San Juan

para ser entrevistada y allí fue representada por la Lcda. Angélica Aponte Duchesne, una abogada empleada del licenciado Gordon Menéndez. Esta abogada atraviesa un procedimiento disciplinario separado.

Por los mismos hechos, el Ministerio Público presentó una moción de descalificación ante el Tribunal de Primera Instancia en el caso Pueblo v. Jonathan Román Rivera, VP2005-6533-6534 el 24 de enero de 2006. Tras la celebración de una vista evidenciaria y la evaluación de los planteamientos presentados, el 2 de mayo de 2006 la Hon. Elizabeth Linares Santiago, Juez Superior del Tribunal de Primera Instancia, Sala de San Juan, emitió una Resolución en la que determinó que existía un claro conflicto de intereses en contravención al Canon 21 del Código de Ética Profesional y en consecuencia descalificó al licenciado Gordon Menéndez y a la licenciada Aponte Duchesne de la representación legal del señor Román Rivera.

Mientras se dilucidaba la moción de descalificación presentada por el Ministerio Público en el foro de primera instancia, el Procurador General solicitó la paralización de los procedimientos de la queja presentada ante este Tribunal por el señor Anhang. Esto sería hasta que adviniera final y firme la resolución emitida por ese tribunal. Tras advenir final y firme la resolución del Tribunal de Primera Instancia, ordenamos al Procurador General que continuara con los procedimientos de la queja

presentada ante este Tribunal y emitiera el informe correspondiente.

En su informe, el Procurador General señaló que "[l]os hechos no controvertidos y demostrados en el proceso establecen que el licenciado Gordon Menéndez representaba al mismo tiempo, y en relación a [sic] los mismos hechos, al acusado, a la viuda del occiso, quién presenció los hechos y fue herida en el acto, y a la hermana de la viuda". Informe del Procurador General, pág. 7. Añadió que

> de los hechos incontrovertidos surge que desde el 24 de enero de 2006 fue planteado el posible conflicto de intereses en el que estaba incurriendo el licenciado Gordon en el caso de la muerte del señor Anhang (hijo). Aún sin necesidad de probar dicho conflicto lo cierto es que toda la situación creaba una apariencia de conducta impropia…. A la luz de los hechos expuestos, encontramos que el licenciado Gordon Menéndez pudo haber [sic] incurrió en violación de los Cánones 21 y 38 de Ética Profesional, por lo que respetuosamente recomendamos la continuación del procedimiento disciplinario que se presenta en este Informe.

> Íd., pág. 8.

En su contestación el querellado explicó que la única intervención de su oficina con la señora Vázquez Rijos fue para coordinarle una nueva entrevista con las autoridades ante el hecho de que ella se encontraba bajo tratamiento por las heridas sufridas el día del incidente. Adujo que como para la fecha de los incidentes la señora Vázquez Rijos no era objeto de denuncia ni acusación, ni era testigo de cargo o de defensa por el asesinato de su esposo, no hubo violación alguna de su parte a los Cánones

de Ética Profesional. En fin, concluyó el licenciado Gordon Menéndez que la querella que presentó el señor Anhang era especulativa e instada por una persona sin legitimación activa, ya que no hubo reclamación por parte de su "único" cliente en ese momento, el señor Román Rivera.

Tras la evaluación del informe presentado, emitimos una Resolución en la que ordenamos al Procurador General que presentara querella. Así lo hizo el 30 de abril de 2008.

En la querella, el Procurador General relató los hechos que dieron base a la presentación de la queja y a la moción de descalificación ante el Tribunal de Primera Instancia. A la luz de ello, formuló dos cargos contra el licenciado Gordon Menéndez por violación al Canon 21 y al Canon 38 de Ética Profesional, supra. El primero de esos cargos por representar al mismo tiempo al acusado, a la viuda del occiso y a la hermana de esta. El segundo es por incurrir en apariencia de conducta impropia que atentó con su deber de exaltación del honor y la dignidad de la profesión legal.

El querellado contestó la querella. Insistió en que no incurrió en ninguna violación de los Cánones 21 y 38 de los de Ética Profesional, supra, y que

> el alegado conflicto lo tenían el Ministerio Público y el quejoso, quienes desde un principio y de sus propias investigaciones surgía que el verdadero sospechoso de la muerte del señor Anhang Uster lo era Alex Pabón Colón y no hicieron prácticamente nada para perseguirlo y encausarlo. Por el contrario, permitieron que una

persona inocente [señor Román Rivera] fuera encausada, procesada y convicta por delitos que no cometió.

Contestación a Querella, págs. 20-21.

Tras un análisis de la querella y de la contestación nombramos a la Hon. Ygrí Rivera de Martínez, como Comisionada Especial para que recibiera la prueba de las partes y rindiera el informe correspondiente. Posteriormente se celebraron varias vistas en las que se acordó que las partes presentarían sus alegaciones y enmiendas, así como las estipulaciones al respecto, sin la presentación de prueba testifical. El 8 de junio de 2011 la Comisionada rindió su informe. Las estipulaciones de las partes contenidas en ese informe fueron las siguientes:

1. El 23 de septiembre de 2005 el Sr. Adam Joel Anhang Uster fue objeto de una agresión que resultó en su muerte.

2. La Sra. Áurea Vázquez Rijos acompañaba al Sr. Anhang cuando ocurrieron los hechos que desembocaron en su muerte.

3. La Sra. Vázquez Rijos resultó también herida durante la ocurrencia de esos hechos.

4. El 5 de octubre de 2005 se le entregó una citación a la señora Vázquez Rijos para que asistiera al día siguiente a declarar sobre lo ocurrido el día de los hechos. Esta no asistió.

5. El 7 de octubre de 2005 se citó nuevamente a la Sra. Vázquez Rijos en su residencia para que

compareciera a ser entrevistada el 11 de octubre de 2005. Mientras estaban los agentes del orden público en el lugar, se personó el licenciado Gordon Menéndez. Este recibió la citación y le adelantó a los agentes que era poco probable que la señora Vázquez Rijos compareciera a la citación debido a su condición de salud.

6. El 11 de octubre de 2005 el licenciado Gordon Menéndez acudió al Centro de Investigaciones de San Juan para excusar la incomparecencia de la señora Vázquez Rijos ya que todavía no se encontraba en condiciones de comparecer, pues continuaba enferma.

7. El 11 de octubre de 2005 el licenciado Gordon Menéndez recibió y firmó en calidad de testigo una citación dirigida a la señora Vázquez Rijos para que compareciera a ser entrevistada el 14 de octubre de 2005.

8. El 14 de octubre de 2005 el licenciado Gordon Menéndez envió vía facsímil una comunicación escrita, acompañada de una certificación médica, en la que excusó la incomparecencia de la señora Vázquez Rijos a la citación, por encontrarse esta aún enferma.

9. El 12 de octubre de 2005 el licenciado Gordon Menéndez compareció al Cuartel General y se identificó como abogado del señor Román Rivera. Este último se encontraba detenido y era sospechoso de la muerte del señor Anhang Uster.

Posteriormente, al señor Román Rivera lo denunciaron por ese asesinato.

10. Ese mismo día, el señor Román Rivera fue arrestado en el negocio de la señora Vázquez Rijos en presencia de la hermana de ésta, la Sra. Marcia Vázquez Rijos.

11. El 3 de octubre de 2005 se celebró la vista de causa probable para arresto en el caso contra el señor Román Rivera. El licenciado Gordon Menéndez compareció en representación del imputado.

12. El 2 de noviembre de 2005 el Sr. Abraham P. Anhang radicó la queja que nos ocupa.

13. El 24 de enero de 2006 el Ministerio Público presentó una moción de descalificación contra el licenciado Gordon Menéndez en el caso El Pueblo de Puerto Rico v. Jonathan Román Rivera, V.P. Núm. 05-6533-6534, que estaba pendiente de vista preliminar.

14. Según surge del expediente del citado caso, el Ministerio Público nunca incluyó a la Sra. Áurea Vázquez Rijos como testigo de cargo.

15. También surgía del expediente que el Ministerio Público no radicó ninguna denuncia, con relación a los hechos del 23 de septiembre de 2005, en que la señora Vázquez Rijos apareciera como parte perjudicada.

16. El proceso contra el señor Román Rivera continuó con otra representación legal y resultó culpable y

convicto por la muerte del señor Anhang Uster. No obstante, el 8 de junio de 2007 fue excarcelado al demostrarse que era inocente de los hechos que se le imputaban y posteriormente se ordenó el archivo y sobreseimiento de la causa criminal.

17. Las autoridades federales acusaron a Alex Pabón en la jurisdicción federal por la muerte del señor Anhang Uster. Eventualmente fue encontrado culpable y convicto.

Luego de la evaluación de la prueba estipulada por las partes, la Comisionada Especial entendió que la querella fue probada toda vez que el licenciado Gordon Menéndez incurrió en violación de los Cánones 21 y 38 de los de Ética Profesional, supra. El 14 de septiembre de 2011 la representación legal del querellado presentó una réplica al Informe de la Comisionada Especial. Cabe señalar que su presentación se hizo pasado el término de veinte días contados a partir de la notificación del Informe que tienen las partes para ofrecer sus comentarios, objeciones y recomendaciones según dispone la Regla 14 de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A. En síntesis, en la réplica se aduce que era incorrecto que se tomaran como hechos probados los contenidos en la moción de solicitud de descalificación y en la resolución que se hizo al respecto, ello pues el quantum de prueba requerido para probar un hecho a los fines de la descalificación es diferente y menos exigente que el necesario para probar una querella. Nuevamente, se reafirmó en que no incurrió

en conflicto de interés alguno, ya que nunca formalizó una relación abogado-cliente con la señora Vázquez Rijos. Además, adujo que era incorrecto que la Comisionada Especial se refiriera a unas alegadas gestiones en favor de la Sra. Marcia Vázquez Rijos cuando esos hechos no formaron parte de las estipulaciones de las partes y no fueron probadas para propósitos de esta querella.

## II

Como es sabido, el Canon 21 de los de Ética Profesional, supra, trata sobre el tema de los intereses encontrados en la relación abogado-cliente. In re Baez Genoval, 175 D.P.R. 28, 35 (2008). Este canon, entre otras cosas, impone a los miembros de la profesión legal completa lealtad hacia sus clientes. In re Betancourt et al., 175 D.P.R. 827, 839 (2009). En vista de ello, todo abogado debe "divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero". Canon 21 de Ética Profesional, supra.

Entre otras cosas, esta norma persigue evitar que un abogado falte al deber de lealtad a su cliente y, por ende, "pueda poner en peligro el principio de confidencialidad que caracteriza la relación fiduciaria de abogado y cliente, y de esa forma menoscab[e] la imagen de la justicia y la confianza que tiene el ciudadano en el sistema". In re Baez Genoval, supra, pág. 35 citando a In re Ortiz Martínez, 161 D.P.R. 572, 579 (2004). Esto ocurre

cuando un abogado, en beneficio de un cliente, aboga por aquello a lo que debe oponerse en cumplimiento de sus obligaciones para con otro cliente. Canon 21 de Ética Profesional, supra.

Como correctamente explica el Juez Sigfrido Steidel Figueroa en su obra reciente *Ética y Responsabilidad Disciplinaria del Abogado*:

> Al formalizar una relación profesional con un cliente, un abogado se obliga a cumplir las prestaciones que la relación contractual genera. También se obliga a cumplir con los deberes que el código de ética le impone, alguno de los cuales pueden concebirse como prestaciones accesorias a la prestación principal pactada. Esos deberes no son exigibles sólo frente al cliente inmediato del abogado durante el tiempo que subsiste la relación contractual. Algunos son exigibles incluso luego de que el abogado cumple la gestión específica que el cliente le encomendó, pues no se proyectan exclusivamente en la dinámica interna entre el abogado y su representado. También tienen implicaciones frente a otros clientes, tanto simultáneos como futuros.

Steidel Figueroa, supra, pág. 173.

En el pasado, hemos delineado las tres instancias principales que los miembros de la profesión legal deben evitar pues representan conflictos de intereses. In re Torres Viera, 170 D.P.R. 306, 311 (2007). La primera de ellas es la representación simultánea de clientes. Esto ocurre cuando "en beneficio de un cliente, el letrado necesariamente tiene que defender aquello a lo cual debe oponerse en cumplimiento de sus obligaciones hacia otro cliente suyo". In re Baez Genoval, supra, pág. 36; In re Torres Viera, supra, pág. 311.

El segundo de estos conflictos se configura cuando un abogado asume la representación sucesiva adversa de clientes. Es decir, cuando "un abogado acepta la representación legal de una persona, cuyos intereses en el caso actual podrían ser conflictivos con los de un cliente pasado del abogado, y por lo tanto, éste se coloca en una posición de desventaja frente a aquél". Steidel Figueroa, supra, pág. 133. En esos casos, "se coloca a un primer cliente en una posición de desventaja frente a un segundo cliente, y por tal razón, en una situación de vulnerabilidad". Íd., pág. 134. El ejemplo clásico de estos conflictos ocurre cuando un "abogado que previamente representó un cliente, posteriormente representa a un cliente adverso a éste en un asunto estrechamente vinculado al evento o situación que generó el pleito original". Íd.

Al enfrentarnos a una controversia sobre si un abogado incurrió en la representación sucesiva de intereses encontrados de clientes, es preciso analizar si existe

> una *relación sustancial* entre los asuntos que maneja el abogado con dos clientes actuales o entre los que manejó con un cliente pasado y los que maneja con un cliente actual. La relación sustancial requerida es más que una mera coincidencia de los sujetos involucrados o una mera coincidencia temática entre el asunto general de una representación actual y una pasada.

Íd., pág. 136.

Véase, además, In re Baez Genoval, supra, pág. 37; In re Monge García, 173 D.P.R. 379, 384 (2008).

En fin, "[e]l cliente no tiene que probar una violación actual al principio de confidencialidad. Sólo se requiere una relación previa de abogado y cliente, y que tal representación resulte adversa y esté sustancialmente relacionada con la anterior". In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778,791-792 (1984).

Ahora bien,

la inexistencia de una relación abogado-cliente dual no exime a un abogado de una imputación de conducta impropia. Sería impropio, por ejemplo, que un abogado cree falsas expectativas a un potencial cliente cuando sabe de antemano que está impedido de representarlo o asesorarlo. Su deber ético consiste, en tales casos, en advertir a cualquier persona que busca su consejo legal que está impedido de asesorarlo o representarlo tan pronto adviene en conocimiento de que los intereses de algún cliente pasado o actual, son contrarios a los del potencial cliente.

Steidel Figueroa, págs. 136-137.

Sin embargo, para que se activen estas dos prohibiciones es necesaria la existencia de una relación abogado-cliente. In re Soto Cardona, 143 D.P.R. 50, 55-56 (1997). No será defensa para el letrado decir que no utilizará las confidencias ofrecidas por su cliente o que este consintió a la representación conflictiva para que no se configure la violación ética. In re Baez Genoval, supra, págs. 36-37. Ello es así porque existe una presunción irrefutable de que un abogado que obtuvo información confidencial de un primer cliente utilizará

esa información en beneficio del nuevo cliente que tiene intereses opuestos a los del cliente anterior. In re Carreras Rovira y Suárez Zayas, supra, pág. 792.

El último escenario que preceptúa este canon como configurativo de un conflicto de intereses ocurre cuando un abogado asume la representación legal de un cliente a sabiendas de que su juicio profesional puede verse afectado por sus intereses personales. "Distinto a los primeros dos escenarios… en este tercer escenario existe sólo una relación abogado-cliente que entra en conflicto con los intereses personales, familiares, económicos, profesionales, o de otra índole, del propio abogado". Steidel Figueroa, supra, pág. 134. Por último, debemos recalcar que cualquier duda de índole ético-profesional que le surja al letrado, debe resolverla con rigurosidad contra sí mismo. In re Carreras Rovira y Suárez Zayas, supra, pág. 785; In re Valentín González, 115 D.P.R. 68, 73 (1984).

Finalmente, cabe señalar que

> [p]ara determinar la situación de posible conflicto de intereses, en cualquiera de las situaciones antes indicadas, es indispensable tener en mente que la prohibición del Canon 21 del Código de Ética Profesional, *supra*, requiere no sólo la existencia real del conflicto, sino que se extiende igualmente a conflictos aparentemente existentes, pero que llevan consigo la semilla de un posible o potencial conflicto futuro.
>
> In re Ortiz Martínez, supra, pág. 581.

**Canon 38**

El Canon 38 de los de Ética Profesional, supra, "preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal". In re Baéz Genoval, supra, pág. 35. Específicamente, este Canon enfatiza los valores principales que deben imperar en el ejercicio de la profesión legal: la dignidad y el honor.

Con relación a este canon, hemos dicho en el pasado que "[l]a justicia debe ser inmaculada, tanto en su realidad interior como en la percepción externa… Cuando la conducta que se le imputa a un abogado demuestra que no se conduce de forma digna y honorable, viola el Canon 38". In re Pons Fontana, Op. de 23 de junio de 2011, 2011 T.S.P.R. 108, 2011 J.T.S. 113, 182 D.P.R. __ (2011); In re Pagán Pagán, 171 D.P.R. 975, 980 (2007); In re Roldán González, 113 D.P.R. 238, 243 (1982). Es por esto que todos los miembros de nuestra profesión deben estar en un ejercicio constante de introspección en que analicen si su conducta va acorde con la responsabilidad ética y moral que permea el ejercicio de la abogacía. "Los abogados son el espejo donde se refleja la imagen de la profesión. Por tal razón, estos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". In re Nieves Nieves, Op. de 7 de marzo de 2011, 2011 T.S.P.R. 33, 2011 J.T.S. 38, 181 D.P.R. __ (2011); In re Pagán Pagán, supra, pág. 980; In re Cuyar Férnandez, 163 D.P.R. 113, 117 (2004).

Por último, cabe señalar que en <u>In re Torres Viera</u>, <u>supra</u>, pág. 312, señalamos que "cuando un abogado asume una representación simultánea adversa que implica un real o potencial conflicto de intereses entre dos de sus representaciones legales, dicho abogado incurre en una conducta violatoria de los Cánones 21 y 38 del Código de Ética Profesional, *supra*".

III

Luego de un minucioso y detenido análisis del expediente ante nos, tenemos que concluir, sin lugar a dudas, que el licenciado Gordon Menéndez incurrió en violación a los Cánones 21 y 38 de Ética Profesional al representar simultáneamente al señor Román Rivera y a la señora Vázquez Rijos. Aunque el querellado aduce que nunca asumió la representación legal de la señora Vázquez Rijos, lo cierto es que al intervenir con las autoridades durante el proceso en que trataban de entrevistarla, dio la impresión de que sí lo hacía. Estamos convencidos de que, aunque no había un acuerdo escrito entre ellos, la conducta del querellado era en calidad de representante legal de la señora Vázquez Rijos.

Recordemos que desde el 7 de octubre de 2005 el licenciado Gordon Menéndez ya actuaba como representante legal de la señora Vázquez Rijos, pues ese día se dirigió al hogar de esta y recibió la citación que se le hizo. Incluso, le informó a las autoridades que la condición de salud de la señora Vázquez Rijos probablemente le

imposibilitaría asistir a testificar. Posterior a esos hechos, el querellado se personó al Centro de Investigaciones de San Juan para excusar nuevamente a la señora Vázquez Rijos ya que aún se encontraba enferma. Nuevamente, el 11 de octubre de 2005 el licenciado Gordon Menéndez recibió y firmó en calidad de testigo otra citación dirigida a la señora Vázquez Rijos. Como la señora Vázquez Rijos no pudo comparecer a esa última citación, el licenciado Gordon Menéndez envió vía facsímil una comunicación escrita, acompañada de una certificación médica, excusándola.

Así las cosas, a pesar de que sabía que había hecho todas esas gestiones a favor de la señora Vázquez Rijos, el 12 de octubre de 2005 compareció al Cuartel General y se identificó como abogado del señor Román Rivera. No sólo estuvo con él durante ese proceso sino que lo representó en la vista de causa probable para arresto.

Todo esto demuestra una violación clara al Canon 21 de Ética Profesional, supra, pues es sabido que los intereses de las víctimas de unos actos delictivos comúnmente se hallan encontrados con los intereses del imputado de esos actos. Evidentemente en este caso, los intereses de la señora Vázquez Rijos como víctima, eran contrarios a los del señor Román Rivera, quien era el acusado en aquel entonces.

Independientemente de que el licenciado Gordon Menéndez creyera que el señor Román Rivera no estaba involucrado en el asesinato del señor Anhang Uster, y que

en un acto de "buena fe" entendiera que tenía que intervenir para que no se encausara a un inocente, debió tener en mente que antes de que se le contactara para representar al señor Román Rivera, era ya intermediario entre la señora Vázquez Rijos y las autoridades. Por ello, al servir anteriormente de enlace entre la señora Vázquez Rijos y las autoridades, y posteriormente asumir la representación del señor Román Rivera, dio al menos la impresión de estar representándolos a todos a la vez. A igual conclusión llegó la Comisionada Especial, Hon. Ygrí Rivera de Martínez al expresar que

> [s]i bien es cierto que a base del conocimiento que tenía del caso y de todos los actores del mismo, el licenciado Gordon podía pensar que ante el confuso estado jurídico de la señora [Á]urea Vázquez y teniendo por inocente al acusado, la realidad era diferente a la que se proyectaba, no existiendo desde su punto de vista posiciones antagónicas, **no es menos cierto que esa concepción del licenciado Gordon no se sostenía sin caer en el conflicto potencial del interés y en la apariencia del conflicto de intereses.**
>
> La realidad era que Jonathan Román estaba acusado de asesinar al esposo de [Á]urea Vázquez Rijos, la viuda a quien el querellado estaba brindando si no una representación formalmente establecida entre ellos, al menos lo que parecía una representación legal para todos los fines en la etapa investigativa del caso.

Es decir, la creencia de la inocencia del señor Román Rivera no era razón para que asumiera la representación de todas las partes involucradas en el caso simultáneamente. Así, el abogado debió prever que con la representación antagónica que realizaba, ocasionaría un conflicto de intereses y peor aún, trastocaría la confianza de todas las partes involucradas en el litigio. Actuó en claro

menosprecio de lo que ordena el Canon 38 de Ética Profesional, supra.

Por todo lo anterior, concluimos que el licenciado Gordon Menéndez violentó los Cánones 21 y 38 de Ética Profesional, supra, al representar simultáneamente a la señora Vázquez Rijos y al señor Román Rivera. Su conducta violó los principios básicos de lealtad y fiducia que deben caracterizar la relación abogado-cliente.

IV

Nos resta ahora determinar la sanción que debemos imponer al querellado. Como es sabido, para determinar la sanción disciplinaria que debe imponerse a un abogado por conducta impropia, es necesario considerar el historial previo del abogado. Es decir, se analizará "si goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si fue realizada con ánimo de lucro; y cualquier otro factor pertinente a los hechos". In re Rivera Ramos, 178 D.P.R. 651, 676-677 (2010); In re Rodríguez Lugo, 175 D.P.R. 1023, 1032 (2009); In re Díaz Ortiz, 150 D.P.R. 418, 427 (2000).

En In re Ortiz Martínez, supra, pág. 587 dispusimos que el licenciado Ortiz Martínez incurrió en violación de los Cánones 21, 35 y 38 de Ética Profesional, supra, "al no informarle al Presidente y a la Directora Ejecutiva de la Comisión de Salud de la Cámara de Representantes de Puerto Rico que, estando vigente el contrato con ese cuerpo legislativo, otorgó otro contrato de servicios profesionales con el Tribunal Examinador de Médicos,

organismo sujeto a investigación por esa comisión legislativa". Por esos hechos, suspendimos al licenciado Ortiz Martínez del ejercicio de la abogacía por el término de dos meses.

Por otra parte, en In re Torres Viera, supra, encontramos al querellado incurso en violación del Canon 21 del Código de Ética Profesional, supra, pues mientras ejercía funciones como asesor legal del Municipio de Juncos, presentó una demanda contra terceros en representación de la parte demandada en un pleito civil, para traer como tercero demandado al mismo municipio que representaba. El licenciado Torres Viera aceptó que incurrió en una conducta violatoria del Canon 38 del Código de Ética Profesional, supra, y tras tomar en consideración que esa era su primera falta en su carrera profesional, ordenamos su suspensión del ejercicio de la abogacía por el término de dos meses.

Recientemente resolvimos en In re Monge García, supra, que la conducta de la querellada, al representar simultáneamente a dos clientes adversos con intereses encontrados, vulneró las disposiciones de los Cánones 21 y 38 de Ética Profesional, supra. No obstante lo anterior, en ese caso decidimos únicamente censurar a la licenciada Monge García ya que esta no tuvo el ánimo de violentar ninguna norma ética y gozaba de una buena reputación en su comunidad, **era su primera falta** y estaba sinceramente arrepentida. La querellada no cobró honorarios por sus

servicios a los clientes afectados, ni estos sufrieron daños materiales a causa de su actuación. Íd., pág. 389.

Según relatáramos, esta es la tercera ocasión en que nos vemos obligados a intervenir con la conducta ética del licenciado Gordon Menéndez. Además, en todos sus escritos el querellado se ha reafirmado en que no incurrió en ninguna violación ética, y que el Ministerio Público tuvo la culpa porque encausó a un inocente a sabiendas de que no era el sospechoso principal del asesinato del señor Anhang Uster.

Considerado todo lo anterior, ordenamos la suspensión inmediata del Lcdo. Jorge Gordon Menéndez de la práctica de la profesión por el término de seis meses.

El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta Opinión Per Curiam y Sentencia.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Jorge Gordon Menéndez

                            CP-2008-09


*SENTENCIA*

En San Juan, Puerto Rico, a 6 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia se ordena la suspensión inmediata del Lcdo. Jorge Gordon Menéndez de la práctica de la profesión por el término de seis meses.

El querellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a estos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta Opinión Per Curiam y Sentencia.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino. La Jueza Asociada señora Pabón Charneco no interviene.


                    Aida I. Oquendo Graulau
                 Secretaria del Tribunal Supremo