

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re<br><br><br><br>Sigfredo Pons Fontana | 2011 TSPR 108<br><br>182 DPR \_\_\_\_ |

Número del Caso: CP        - 2010 - 14

Fecha: 23 de junio de 2011

Oficina de la Procuradora General:

      Lcdo. Edna E. Rodríguez Benítez
      Procuradora General Auxiliar

Abogado del Querellado:

      Por derecho propio

Materia: Conducta Profesional            –  La Suspensión será efectiva una vez advenga final y firme la Sentencia conforme a la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.

Este documento const        ituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Sigfredo Pons Fontana          CP-2010-14

PER CURIAM

En San Juan, Puerto Rico, a 23 de junio de 2011.

En el presente caso nos corresponde atender una querella ética contra un abogado que, mientras representaba a una parte en varios procesos judiciales, intentó ser contratado como corredor de bienes raíces para vender los bienes objeto de esos litigios. Por los fundamentos que se exponen a continuación, ordenamos la suspensión inmediata del Lcdo. Sigfredo Pons Fontana del ejercicio de la abogacía y de la notaría, por un término de tres meses.

I.

El licenciado Pons Fontana fue admitido al ejercicio de la abogacía el 13 de agosto de 1986 y prestó juramento como notario el 4 de septiembre de ese mismo año.

Durante el 2008, éste fungió como el representante legal de la Sra. Ana María Martínez Agosto en el pleito de divorcio de ésta contra su ex esposo, el Sr. Alberto Rivera Rivera. El 1 de mayo de 2008, el licenciado Pons Fontana envió a la señora Martínez Agosto y al señor Rivera Rivera un contrato de autorización de venta exclusiva para que se le encomendara ser el corredor de bienes raíces de las propiedades pertenecientes a la comunidad de bienes gananciales de ambos. A raíz de esa actuación, el abogado del señor Rivera Rivera presentó una moción en la que le informó al Tribunal de Primera Instancia que, estando pendiente el litigio sobre liquidación de bienes gananciales entre éste y la señora Martínez Agosto, recibió el referido contrato. Dicho proceder le pareció, según alegó, una violación del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, pues el licenciado Pons Fontana había representado a la señora Martínez Agosto en varios litigios, incluyendo el divorcio antes mencionado, y había asumido la representación legal de ésta en el caso de liquidación de bienes gananciales. A raíz de estos eventos, la Jueza Superior Hon. Zulma Raíces Díaz nos refirió copia de una orden mediante la cual consignó los hechos que podrían constituir violaciones éticas para nuestra consideración, y denegó la participación del licenciado Pons Fontana como representante legal de la señora Martínez Agosto en el caso de liquidación de bienes gananciales.

Examinada dicha orden, se le concedió un término al licenciado Pons Fontana para que se expresara sobre este asunto. El abogado compareció ante nos y expuso que él había

representado a la señora Martínez Agosto en el pleito de divorcio, caso que, según alegó, había terminado en abril de 2009. Entendemos que quiso decir abril de 2008, pues, a renglón seguido, expresó que "luego de terminado el asunto relacionado con el divorcio, la Sra. Martínez visit[ó] nuestra oficina interesando la venta de la[s] priopieda[des]". Adujo, además, que desconocía que se había presentado una demanda en contra de la señora Martínez Agosto para la liquidación de la comunidad postganancial al momento de remitirle al señor Rivera Rivera el contrato de corredor exclusivo de bienes raíces para la venta de las propiedades gananciales. Asimismo, aseguró que fue posterior al envío del contrato que compareció asumiendo la representación legal de la señora Martínez Agosto. Finalmente, adujo que, de acuerdo a nuestras expresiones en In re Santiago Rios, 172 D.P.R. 802 (2007), cuando un abogado participa en negocios o actividades de ventas de bienes y servicios comerciales que no generan trabajo adicional como abogado, tal práctica no presenta problemas éticos.

Luego de comparecer ante nos para contestar la queja en su contra, el licenciado Pons Fontana compareció ante el foro primario para solicitar la reconsideración de la orden que declaró sin lugar su moción asumiendo la representación legal de la señora Martínez Agosto en el caso de liquidación de bienes gananciales.

Así las cosas, referimos la queja a la Oficina de la Procuradora General para que presentara la correspondiente querella. En respuesta, la Procuradora General contradijo la

comparecencia del licenciado Pons Fontana. En particular, adujo que no era posible la versión del abogado sobre el hecho de que, supuestamente, ya había terminado la relación abogado-cliente en el caso de divorcio al momento de remitir el contrato que da lugar a la presente querella. Esto, pues el licenciado Pons Fontana había comparecido en representación de la señora Martínez Agosto en un tercer caso referente a la ejecución de la hipoteca sobre su residencia ganancial. El acreedor hipotecario había emplazado a la señora Martínez Agosto el 20 de abril de 2008, esto es, varios días antes de que el querellado enviara el contrato de venta exclusiva al señor Rivera Rivera para su aprobación, cosa que Pons Fontana no mencionó en su contestación a la queja. El 2 de julio de 2008, el licenciado Pons Fontana compareció mediante varias mociones tanto en el caso de liquidación de bienes gananciales como en el caso de la acción de ejecución de hipoteca, lo que demuestra que mantenía la relación abogado-cliente al momento de remitir el contrato en controversia. Es decir, que al momento de intentar ser contratado como el corredor exclusivo de bienes raíces para vender las propiedades, el licenciado Pons Fontana era abogado en dos pleitos independientes para los cuales dichos inmuebles eran objeto de litigio. Por todo lo anterior, la Procuradora General alegó que el querellado violó los Cánones 35, 37 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35, 37 y 38.

En vista de que el Canon 35, *supra*, impone un deber de sinceridad y honradez que impide a los abogados utilizar

medios que no sean sinceros o inconsistentes con la verdad, la Procuradora General concluyó que Pons Fontana fue deshonesto al responder a la queja en su contra. Esto, pues expresó una relación de hechos confusa para tratar de exponer que no representaba a la parte en el pleito cuando envió el contrato en cuestión. Por su parte, el Canon 37, *supra*, señala que no constituye una actividad propia de la buena práctica de la profesión el que un abogado participe en un negocio si el mismo le proporciona trabajo adicional lucrativo –como abogado– que de otra manera no se hubiese obtenido. Por último, el Canon 38, *supra*, en esencia, proscribe toda apariencia de conducta impropia.

En respuesta, el licenciado Pons Fontana compareció ante nos y expuso su posición sobre la querella presentada en su contra y los cargos que se le imputaron en ella. En su escrito, el querellado aceptó los señalamientos en su contra y reconoció, a su vez, que fue un error haber remitido el contrato cuando todavía representaba a la señora Martínez Agosto, por lo que coincidió en que ello constituía una violación del Canon 37 de los Cánones de Ética Profesional, *supra*. Además, reconoció expresamente haber violado el Canon 35 de los Cánones de Ética Profesional, *supra*, al no haber sido sincero en su exposición fáctica cuando respondió la queja, y que todo lo anterior resultó en la erosión de su deber de exaltar el honor y la dignidad de la profesión que impone el Canon 38 de los Cánones de Ética Profesional, *supra*.

Con el beneficio de la comparecencia de la Procuradora General y del licenciado Pons Fontana, y no habiendo controversias de hechos, pasamos a examinar las posibles violaciones éticas.

II.

A.

Los abogados tienen la obligación de velar por que los procesos legales se lleven de forma honesta, digna y transparente. El Canon 35, *supra*, dispone, en lo pertinente, que:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. **No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos** o del derecho. *Íd.* (Énfasis suplido).

Este Canon impone a los abogados un deber de sinceridad y honradez frente a todos, no sólo en la tramitación de litigios, sino en todo tipo de acto. In re Collazo Sánchez, 159 D.P.R. 769 (2003). Ese deber de sinceridad es *erga omnes*. In re Franco Rivera y Masini Soler, 134 D.P.R. 823 (1993). Los abogados no pueden ofrecer información falsa o inducir a error a los tribunales, ya sea al proveer información que no se ajusta a la verdad u ocultando información que deba ser revelada. Pueblo v. Santiago Pérez, 160 D.P.R. 618 (2003); In re Astacio Caraballo, 149 D.P.R. 790 (1999). Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin ésta, no podría la profesión jurídica

justificar su existencia. In re Martínez, Odell II, 148 D.P.R. 636 (1999).

Asimismo, hemos expresado que la firma de un abogado en una moción tiene el efecto legal de un juramento, y que la declaración bajo juramento de hechos falsos constituye una violación del Canon 35, *supra*. *Íd.*; Regla 9.1 de Procedimiento Civil, 32 L.P.R.A. Ap. II R. 9.1.

B.

Por otro lado, el Canon 37, *supra*, preceptúa que:

La participación del abogado en negocios o actividades de venta de bienes, agencias de cobro, fianzas u otros servicios comerciales propios o pertenecientes a otras personas no es una actividad propia de la buena práctica de la profesión si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido.

En In re Roldán Figueroa, 106 D.P.R. 4 (1977), se le presentaron ocho cargos de violaciones éticas a un abogado por su relación abogado-cliente en distintos escenarios. En cuanto a cuatro de ellos, concluimos que existió una relación de negocios entre el querellado y sus clientes, sobre la compra y venta de bienes inmuebles y préstamos, que produjeron consecuencias perjudiciales para los clientes. Entre las transacciones, hubo una en la que el querellado y su esposa representaron a una clienta en un pleito de divorcio. A solicitud del querellado, la clienta le prestó a éste una suma de dinero, que constituía su participación en la sociedad legal de bienes gananciales. Al finalizar el litigio, esto tuvo la consecuencia de que, tras el abogado

quedarse sin fondos, la clienta recibió una cantidad menor de la que le correspondía.

Allí aplicamos, sin mayor discusión, el Canon 37, *supra*, y sostuvimos que la participación del abogado en negocios o actividades de venta de bienes u otros servicios comerciales no es una actividad propia de la buena práctica de la profesión, cuando ello le genera más trabajo profesional que de otra forma no hubiese obtenido. Ello, expresamos, es una desviación de las normas de conducta profesional que debe observar puntillosamente todo el que tiene privilegio de ejercer la profesión. *Íd.*

En In re Humberto Ramírez Ferrer, 147 D.P.R. 607 (1999), se le imputó a un abogado haber retenido un dinero de un préstamo hipotecario otorgado por la casa hipotecaria que éste presidía, sin realizar las contraprestaciones acordadas a cambio de esas sumas. En este caso resolvimos que el abogado siempre se desempeñó en calidad de agente de la casa hipotecaria y en ningún momento le prestó servicios legales a la quejosa. Por lo tanto, no surgía del expediente del caso que el querellado hubiese utilizado la casa hipotecaria para allegarse trabajo como abogado y, de esa forma, resolvimos que no se violó el Canon 37, *supra*.

En In re Rivera Vicente, 172 D.P.R. 349 (2007), enfrentamos un asunto en el que un bufete de abogados creó una empresa con el propósito de ayudar a una agencia de gobierno a implantar un proyecto de reciclaje. La agencia de gobierno contrató a la empresa y, como parte del acuerdo, le reconoció el derecho a contratar asesoría legal. Luego, la

empresa contrató al mismo bufete que la creó. Allí, analizamos si el querellado, como miembro del bufete, había violado el Canon 37, *supra*. Resolvimos que éste no se violó porque, a pesar de que el bufete había utilizado a la empresa para agenciarse más trabajo legal, no podíamos concluir necesariamente, ante los hechos presentados, que el bufete no habría obtenido el trabajo de todas maneras.

Ante esos mismos hechos, en In re Santiago Ríos, *supra,* consideramos que cada día es más común que una misma persona posea varios títulos profesionales. En consecuencia, cada profesional está legítimamente permitido a desempeñar libremente cualquiera de esas profesiones en las que se ha entrenado. Conscientes de los diversos roles que puede desempeñar el profesional del Derecho, se han creado reglas específicas en códigos modelos para evitar los posibles conflictos de intereses. Esto está ampliamente regulado en nuestro Código de Ética Profesional, *supra,* específicamente, bajo las regulaciones de conflictos de interés. No obstante, en esa ocasión tampoco encontramos suficiente evidencia que demostrara que el querellado hubiera utilizado su posición como Presidente de la empresa creada por el bufete con el fin directo o indirecto de proporcionarse trabajo profesional lucrativo que de otra forma no hubiese obtenido. Por lo tanto, concluimos que tampoco se había violado el Canon 37, *supra*.

Asimismo, la práctica de brindar varios servicios o ejercer distintas profesiones simultáneamente ha sido discutida en la literatura sobre ética profesional. En ese

sentido, en su obra sobre ética en la abogacía, Sigfrido Steidel Figueroa expresa que "es difícil concebir una actividad comercial que por su propia naturaleza sea inherentemente conflictiva con el ejercicio de la abogacía… lo que la ética y las normas disciplinarias prohíben es que un abogado se involucre en actividades comerciales que pudieran ser conflictivas con su particular práctica profesional". S. Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, 1era ed., San Juan, Publicaciones J.T.S., 2010, pág. 147. Lo que se busca es que los intereses del abogado no entren, de ninguna manera, en conflicto con los intereses del cliente a quien viene llamado a defender. In re Toro Cubergé, 140 D.P.R. 523 (1996).

De otra parte, Steidel añade que: "las transacciones comerciales entre un abogado y un cliente se consideran inherentemente sospechosas, no sólo porque el juicio profesional del abogado podría comprometerse, sino también por la naturaleza desigual de la relación abogado-cliente". Íd. pág. 227. Se presume que en la relación abogado-cliente el abogado adquiere información privada del cliente y éste, a su vez, deposita su confianza y lealtad en el abogado, y eso lo hace susceptible de múltiples abusos. In re Morell, Alcover, 158 D.P.R. 791 (2003).

C.

Por su parte, el Canon 38, supra, establece, en lo pertinente, que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque al así hacerlo conlleve

sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia.… Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. *Íd*.

La justicia debe ser inmaculada, tanto en su realidad interior como en la percepción externa. In re Rodríguez Torres, 104 D.P.R. 758 (1976). Cuando la conducta que se le imputa a un abogado demuestra que no se conduce de forma digna y honorable, viola el Canon 38. In re Roldán, *supra*; In re Pagán Pagán, 171 D.P.R. 975 (2007).

Como se sabe, todo abogado debe evitar hasta la apariencia de conducta impropia. 4 L.P.R.A. Ap. IX C. 38. Esta exigencia se fundamenta "en la idea de que la confianza e imagen de la profesión se lacera no sólo cuando se viola una norma específica de los cánones de ética profesional, sino también cuando la conducta del abogado *parece impropia*". Steidel Figueroa, op. cit., pág. 57.

### III.

Al analizar la conducta del abogado de epígrafe, a la luz de los fundamentos antes expuestos, no es necesario abundar sobre la violación del Canon 35, *supra*, que se le imputa. Basta decir que el licenciado admitió haber hecho un recuento fáctico confuso, que se pudo aclarar gracias a la explicación provista por la Procuradora General. Esto es, el licenciado Pons Fontana faltó a la verdad al intentar hacernos creer, como parte del proceso disciplinario que, al momento en que trató de conseguir que le contratasen como corredor exclusivo de bienes raíces para la venta de las propiedades gananciales

objeto de litigio, no representaba a la señora Martínez Agosto. Ante tal admisión, encontramos probado que el licenciado Pons Fontana incurrió en la violación al Canon 35 del Código de Ética Profesional, *supra*, al faltar a su deber de honradez y sinceridad.

No cabe duda de que, ante nos, debió presentar una exposición de hechos sincera y acertada sobre las circunstancias en que surgió la preocupación ética sometida por el Tribunal de Primera Instancia que dio paso al presente caso. Es evidente que faltar a la verdad durante un proceso disciplinario ante nos es incongruente con el deber de exaltar el honor y la dignidad de la profesión, principio que busca proteger, a su vez, el Canon 38, *supra*. La abogacía, como hemos dicho, descansa en la expectativa de confianza y honestidad que tanto este Tribunal como la ciudadanía esperan de sus miembros.

Somos conscientes de que al querellado no se le presentaron cargos éticos sobre conflictos de interés, por lo que no le enjuiciamos bajo los Cánones que regulan dicha conducta. No obstante, entendemos que el licenciado Pons Fontana utilizó su influencia, ganada a través de la relación profesional que sostenía con su clienta, para agenciarse trabajo adicional como corredor de bienes inmuebles. Al hacerlo, se colocó en una posición cuestionable desde el punto de vista ético, pues dependiendo del desenlace de los litigios en los que era parte su clienta, el abogado pudo haber creado una expectativa de lucro a través de la venta de los inmuebles en controversia. Ello nos lleva a concluir que

el abogado de epígrafe incurrió en una aparente conducta impropia, muy distante de lo que se espera de quienes practican la profesión, máxime cuando la ciudadanía espera poder depositar su confianza y lealtad en el defensor de sus derechos. Esto, unido a la violación de su deber de sinceridad, nos lleva a concluir que el licenciado Pons Fontana violó el Canon 38 de los Cánones de Ética Profesional, *supra*.

No obstante, no podemos concluir que el licenciado Pons Fontana violó el Canon 37 del Código de Ética Profesional, *supra*. Como se desprende de los casos antes mencionados, lo que el Canon 37 busca evitar es que un abogado utilice otra industria o negocio para agenciarse trabajo legal lucrativo, que de otra forma el bufete no hubiese obtenido. En el presente caso la controversia está invertida, pues el abogado aprovechó su práctica como abogado para agenciarse trabajo adicional en otra industria o negocio.

Entendemos que el licenciado Pons Fontana es sincero al expresar su pesar y arrepentimiento por estas faltas al punto de agradecer y pedir disculpas por el tiempo y esfuerzo que ha invertido la Oficina de la Procuradora General y los funcionarios de este Tribunal en su caso. Ante los hechos del presente caso, sin embargo, nos vemos obligados a descargar nuestra función disciplinaria, con las consecuencias que esto conlleva.

Por todo lo anterior, brindando particular consideración -en calidad de atenuantes- a su arrepentimiento al aceptar los hechos imputados y al hecho de que el abogado ha

practicado la profesión sin tachaduras desde 1986, suspendemos al licenciado Pons Fontana de la profesión durante un término de tres meses.

El licenciado Pons Fontana notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal, y devolverá a éstos los expedientes de cualquier caso pendiente y los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente. Además, se ordena al Alguacil General de este Tribunal que se incaute la obra notarial del licenciado Pons Fontana.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re: Sigfredo Pons Fontana          CP-2010-14

SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2011.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, se suspende al licenciado Pons Fontana de la profesión durante un término de tres meses.

El licenciado Pons Fontana notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal, y devolverá a éstos los expedientes de cualquier caso pendiente y los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente. Además, se ordena al Alguacil General de este Tribunal que se incaute la obra notarial del licenciado Pons Fontana.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo