EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Enrique Reyes Coreano | 2014 TSPR 51 <br><br> 190 DPR ____ |

Número del Caso: CP-2008-17

Fecha: 2 de abril de 2014

Comisionada Especial:

>       Hon. Ygrí Rivera de Martínez

Abogado del Querellado:

>       Lcdo. Ángel Tapia Flores

Oficina de la Procuradora General

>       Lcda. Mariana Negrón Vargas
>       Subprocuradora General
>
>       Lcda. Minnie H. Rodríguez
>       Procuradora General Auxiliar
>
>       Lcda. Miriam Soto Contreras
>       Procuradora General Auxiliar

Materia: Conducta Profesional- La suspensión será efectiva el 8 de abril de 2014, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Enrique Reyes Coreano          CP-2008-17      Conducta
                                               Profesional

PER CURIAM

En San Juan, Puerto Rico, a 2 de abril de 2014.

El Lcdo. Enrique Reyes Coreano (querellado), fue admitido al ejercicio de la abogacía el 5 de junio de 1974 y, posteriormente, al ejercicio de la notaría el 1 de julio del mismo año. El 27 de agosto de 2008 la Oficina del Procurador General de Puerto Rico (Procurador General) presentó una querella contra el licenciado Reyes Coreano. Le formuló seis cargos por alegadas violaciones a los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX. A continuación exponemos un resumen de los hechos que motivaron el proceso disciplinario que hoy atendemos.

**I**

El 10 de agosto de 2004 el Sr. Rafael Delbrey Rivera (quejoso) presentó una queja ante este Tribunal contra el licenciado Reyes Coreano. El quejoso indicó en la queja que el querellado lo representaba en dos demandas de cobro de dinero y una de daños y perjuicios. Arguyó que el querellado le cobró $18,000 por dichos servicios, incluyendo $2,000 que alegadamente correspondían al Lcdo. Jeffrey O. Reyes Rivera, quien originalmente representaba al quejoso en dichos casos. Así, el señor Delbrey Rivera alegó que le pidió al querellado que le entregara su expediente y una factura detallada con relación a las horas trabajadas, pero este se negó a entregarle los documentos porque alegadamente no lo representaba.

Por otro lado, el quejoso expresó que estaba casado con la Sra. Elaine Reyes Torres, sobrina del licenciado Reyes Coreano. El 10 de agosto de 2004 durante una vista de su divorcio con la señora Reyes Torres, el querellado compareció en representación de su hermano, el Sr. Eliseo Reyes Coreano, quien a su vez era el suegro del señor Delbrey Rivera. En dicha vista se iba a dilucidar si los suegros del quejoso habían comprado una propiedad con dinero de la Sociedad Legal de Gananciales habida entre el quejoso y su esposa, sin su autorización. Para esa fecha el querellado ya lo representaba en las dos demandas antes mencionadas, por lo tanto, adujo que al licenciado Reyes

Coreano representar a su hermano en la vista, existía un conflicto de interés.

Vista la queja contra el licenciado Reyes Coreano, le solicitamos a este que contestara la misma. En la contestación a la queja el querellado explicó que el señor Delbrey Rivera era su sobrino político, el cual se estaba divorciando de su sobrina la señora Reyes Torres. Aclaró que él no representaba a ninguna de las partes en el divorcio. Así las cosas, explicó que la abogada del quejoso, la Lcda. María E. Juarbe I. Botella, le envió una carta el 29 de julio de 2004 para solicitarle el contrato que el quejoso suscribió con él. Este le contestó que solo tenía un contrato con la señora Reyes Torres, pero negó entregárselo por tratarse de información confidencial entre él y su clienta. Además, le informó a la licenciada que el señor Delbrey Rivera tenía unos casos de desahucio por falta de pagos, pero que era representado por el licenciado Reyes Rivera. Afirmó que solo había firmado un contrato de servicios profesionales con la señora Reyes Torres para representar sus intereses y los de la Sociedad Legal de Gananciales como partes interventoras en los casos de desahucio y cobro de rentas presentadas por CRV Río Hondo contra el quejoso.

Contrario a lo alegado por el quejoso, el licenciado Reyes Coreano adujo que compareció a la vista de divorcio con el único propósito de acompañar a su hermano, pero no representándolo en la vista. Por otro lado, negó haber recibido $18,000 por parte del quejoso y negó haber

facturado $2,000 por los servicios prestados por el licenciado Reyes Rivera. Según el querellado, el licenciado Reyes Rivera prestó sus servicios gratuitamente por su amistad con la señora Reyes Torres.

Luego de recibir la contestación a la queja, el señor Delbrey Rivera presentó una réplica en la que indicó que al comenzar los casos de desahucio era representado por el licenciado Reyes Rivera. Ahora bien, durante el proceso el querellado le hizo varias recomendaciones sobre el caso y se reunió en varias ocasiones con el licenciado Reyes Rivera. Como evidencia, presentó una factura que le entregó el querellado el 20 de enero de 2004,[1] en la cual en el inciso C incluye las reuniones con el licenciado Reyes Rivera. Asimismo, dicha factura expresa que ese bufete se encargaría de pagar los honorarios del licenciado Reyes Rivera por la representación en los casos de desahucio y cobro de dinero. El señor Delbrey Rivera explicó que el querellado le había indicado que asumiría su representación en los casos antes mencionados. Así y confiando en la palabra del querellado, prescindió de los servicios del licenciado Reyes Rivera. Alegó que luego comenzaron los problemas matrimoniales con su esposa y se percató que todas las gestiones que estaba realizando el querellado no eran para su beneficio, sino para el de su esposa y la Sociedad Legal de Gananciales.

El 28 de diciembre de 2004 referimos la queja ante el Procurador General para que realizara una investigación

---

[1] Véase Anejo 3 del Informe del Procurador General.

y rindiera un informe conforme con la Regla 14(d) del Reglamento de este Tribunal, 4 LPRA XXI-A R. 14(d). Así, el Procurador General comenzó la investigación correspondiente. Durante el transcurso de la investigación, el señor Delbrey Rivera encontró copia del contrato de servicios profesionales que había suscrito con el querellado y se lo entregó al Procurador General.[2] Ahora bien, el mismo tenía únicamente la firma del licenciado Reyes Coreano y del quejoso, mas no la firma de la esposa. Sobre dicho contrato el querellado expresó que el matrimonio acudió a su oficina para que este preparara una propuesta de contrato de servicios profesionales para atender los casos de desahucio y cobro de dinero. Indicó que el quejoso abandonó la reunión y, por tal razón, le entregó la propuesta firmada a la señora Reyes Torres para que la discutiera con su esposo y de él estar de acuerdo la firmaran. Sin embargo, explicó que el señor Delbrey nunca estuvo de acuerdo con el contrato y no lo firmó.

Luego de culminar la investigación, el Procurador General rindió un informe en el cual concluyó que el licenciado Reyes Coreano "atentó contra las disposiciones y principios esbozados en los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional". Así las cosas, mediante resolución del 9 de noviembre de 2007 autorizamos al Procurador General a que presentara la querella correspondiente de conformidad con el contenido de dicho informe. Por consiguiente, el 27 de agosto de 2008 el

---

[2] Véase Anejo 6 del Informe del Procurador General.

Procurador General presentó una querella contra el licenciado Reyes Coreano.

En la querella, el Procurador General formuló seis cargos. En el primer cargo imputó al querellado la violación al Canon 18 del Código de Ética Profesional, *supra,* por no haber ejercido su deber de lealtad y compromiso para con el señor Delbrey Rivera. En el segundo cargo le atribuyó al querellado infringir el Canon 19, *supra*, por negar la existencia de responsabilidad que tenía con su cliente y no mantenerlo informado de todo asunto importante que surgiera en el desarrollo del caso. En el tercer cargo, el Procurador General inculpó al querellado de la violación del Canon 21, *supra*, el cual prohíbe a un abogado representar intereses encontrados. En cuanto al cuarto cargo, el Procurador General entendió que el querellado violó el Canon 23, *supra*, ya que negó la existencia del contrato con el quejoso y no quiso entregarle una factura detallada de sus servicios. En el quinto cargo se le imputó violar el Canon 35, *supra*, respecto a que "la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada". Por último, en el sexto cargo el Procurador General atribuyó al licenciado Reyes Coreano infringir el Canon 38, *supra*, que establece que un abogado debe evitar hasta la apariencia de conducta impropia en el desempeño de sus labores profesionales.

Luego de presentada la querella, el licenciado Reyes Coreano presentó varios escritos impugnándola, pero sin contestar la misma.[3] Además, presentó ante esta Curia una *Moción en Cumplimiento de Mandamiento y se Archive la Querella por Falta de Jurisdicción*. Esta fue declarada no ha lugar y se le concedió un plazo final de quince días para que contestara la querella. No obstante, el querellado presentó una moción de reconsideración.

Ahora bien, debido a los múltiples escritos presentados por el querellado sin obedecer nuestras órdenes y tomando en consideración su conducta, entendimos necesario evaluar la capacidad mental y emocional del licenciado Reyes Coreano. Así las cosas, el 17 de junio de 2009 este Tribunal declaró no ha lugar la reconsideración y designó como Comisionada Especial (Comisionada) a la Hon. Ygrí Rivera de Martínez para que recibiera prueba sobre la capacidad mental o emocional del licenciado Reyes Coreano, según establecido en la Regla 15(H) de este Tribunal, 4 LPRA Ap. XXI-A, R. 15(H).

Una vez se cumplió con todo lo dispuesto en la Regla 15 (H), *supra*, la Comisionada emitió un informe en el cual expresó que el panel de médicos concluyó que el licenciado Reyes Coreano no padece de incapacidad mental. A tenor de lo anterior, esta Curia archivó el procedimiento de

---

[3] Los escritos presentados por el licenciado Reyes Coreano fueron: *Moción Acompañando Carta al Hon. Salvador J. Antonetti Stutts en Agotamiento de Trámite Administrativo; Impugnación de Querella sometida por la Hon. Mariana D. Negrón Vargas, Hon. Minnie H. Rodríguez López y la Hon. Ileana M. Oliver Falero y Solicitud de Vista Evidenciaria Exculpatoria y; Investigación de Conducta Inadecuada y Negligencia Crasa de Procuradoras Bajo los Hechos Claramente Expuestos.*

incapacidad y ordenó la continuación de los procedimientos bajo la Regla 14 del Reglamento de este Tribunal, *supra*.

Así las cosas, mediante resolución del 5 de noviembre de 2010 nombramos nuevamente como Comisionada a la honorable Rivera de Martínez para que recibiera prueba y nos rindiera un informe con sus determinaciones de hechos y recomendaciones. Luego de varias vistas ante la Comisionada, esta emitió un informe en el cual concluyó que el licenciado Reyes Coreano violó los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, *supra*.

La Comisionada indicó que el testimonio y los escritos del querellado fueron inconsistentes, confusos y alejados de la verdad. Expresó que las actuaciones del licenciado Reyes Coreano no fueron sinceras, ya que "no concuerda lo que dice con la realidad de lo que demuestran los documentos, aun los que él mismo estipuló y se niega a reconocer su responsabilidad en los hechos, relación abogado-cliente con el quejoso y sus actuaciones al margen de los Cánones de Ética Profesional". En lo pertinente, indicó que

> [a]nte los hechos probados, quedó demostrada la pobre diligencia del querellado en su gestión profesional, su pobre actitud desplegada antes y durante el proceso disciplinario, la falta de aceptación clara y sincera de sus actuaciones erróneas, su conducta errática y contumaz, su conflicto de interés ignorado y su falta de honestidad.

Al considerar la prueba, la Comisionada entendió que quedó probado que a partir del 1991 se estableció una relación de abogado-cliente entre el licenciado Reyes

Coreano y el señor Delbrey Rivera, ya que el querellado representó al quejoso en unas acciones que respondían al uso ilegal del nombre de una de las tiendas que formaban parte de la corporación de la cual el quejoso era presidente. Dicha relación profesional continuó y el querellado representó a la señora Reyes Torres en los casos de cobro de dinero y daños y perjuicios, siendo la parte demandante no solo la señora Reyes Torres sino también la Sociedad Legal de Gananciales, compuesta por esta y el señor Delbrey Rivera.

Por otro lado, según la minuta de la vista relacionada con el uso indebido de fondos gananciales en el divorcio entre la señora Reyes Torres y el señor Delbrey Rivera, el querellado compareció en representación de su hermano, quien era suegro del quejoso. De la minuta de esa vista se desprende que el querellado indicó que comparecía en representación de su hermano únicamente para esa vista. Al escuchar eso la abogada del quejoso, la licenciada Juarbe I. Botella, expresó en corte abierta que existía un conflicto de interés ante la representación legal del querellado de su hermano en esa vista. Así las cosas, la Comisionada entendió probado que el querellado sí compareció en representación de su hermano.

En cuanto a la factura de 20 de enero de 2004, estipulada por las partes, la Comisionada informó que quedó demostrado que el querellado le facturó al quejoso por el diseño de estrategia de los casos de desahucio y cobro de dinero, por reuniones que realizó con el

licenciado Reyes Rivera y por los honorarios del licenciado Reyes Rivera. Según el informe de la Comisionada **"el querellado no pudo nunca explicar por qué cobró los honorarios del Lcdo. Jeffrey Reyes Rivera, luego de haber negado insistentemente este aspecto, afirmando incluso que el licenciado Reyes Rivera había prestado gratuitamente los servicios"**. Además, la Comisionada expresó que no fue creíble la procedencia de la factura según el querellado. Sobre este aspecto la Comisionada indicó que

> [t]odo el tracto es muy confuso y no parece veraz. La señora Reyes contrató los servicios del querellado el 12 de abril de 2005, las demandas fueron presentadas en diciembre de 2004 y la factura tiene fecha de **20 de enero de 2004.** (Énfasis nuestro).

Añadió que no hay forma de conciliar las fechas de las demandas y la factura con la versión ofrecida por el querellado. La Comisionada expresó que de creer la versión del querellado, este "preparó una factura a un cliente que, aún no era su cliente, por unos servicios que aún no había ofrecido ni acordado".

Finalmente, en cuanto al contrato de servicios profesionales que entregó el señor Delbrey Rivera, la Comisionada no le dio credibilidad a la versión del licenciado Reyes Coreano porque la misma fue inconsistente. Indicó que el contrato habla por sí solo y el mismo quedó probado, ya que no fue controvertido con prueba convincente por parte del querellado.

No obstante, la Comisionada expresó en su informe que el licenciado Reyes Coreano cumple con varios de los atenuantes que este Tribunal ha validado en los procedimientos disciplinarios. La Comisionada indicó, en lo pertinente, que

> [n]o obstante lo anterior, nos permitimos, con mucho respeto, sugerir que en caso de que este Honorable Tribunal acoja este informe, se tome como atenuante el hecho de que es la primera vez que el querellado enfrenta un procedimiento disciplinario. Además, se trata de una persona que goza de buena reputación en su comunidad y labora activamente en su iglesia, destacándose en esta función junto a su familia.

Las partes no objetaron el informe de la Comisionada, por lo que el caso quedó sometido el 19 de septiembre de 2013.[4] Examinados los hechos ante nuestra consideración, estamos en posición de resolver.

---

[4] El informe de la Comisionada fue notificado el 30 de mayo de 2013. Desde ese momento comenzó el término simultáneo de 20 días que tienen las partes para ofrecer sus comentarios u objeciones, y sus recomendaciones, en cuanto a la acción que deba tomar el Tribunal. Transcurrido dicho término, el tribunal resolverá lo que proceda en derecho. Véase, Regla 14(l) y (m) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B.

El 12 de junio de 2013, el licenciado Reyes Coreano solicitó la transcripción de las vistas para poder oponerse al informe. Mediante resolución de 25 de junio de 2013 autorizamos la regrabación solicitada. El 7 de agosto de 2013 el querellado consignó el arancel necesario. Ahora bien, transcurrido más de un mes, el 19 de septiembre de 2013, este Tribunal dio por sometido el caso para su adjudicación. Así las cosas, el 24 de septiembre de 2013, mediante *Moción Solicitando Reconsideración y para que se Permita la Radicación de Escrito en Oposición a Informe de la Comisionada Especial* el licenciado Reyes Coreano solicitó, que se reconsiderara la orden de dar por sometida la querella. Luego, el 25 de octubre de 2013, el licenciado Reyes Coreano presentó sus objeciones al informe de la Comisionada.

La moción presentada el 24 de septiembre de 2013 y la oposición al informe de la Comisionada presentada el 25 de octubre de 2013, por el querellado fueron presentadas en exceso al término para objetar el informe de la Comisionada y luego de que el caso quedara sometido para su resolución, por lo que ambas mociones se declaran no ha lugar. Por tanto, no consideraremos la transcripción presentada ni las objeciones y recomendaciones. Véase, In re Ayala Vega, res. en 10 de octubre de 2013, 2013 TSPR 117, 189 DPR ___ (2013); In re Comas, Rosado, 180 DPR 143 (2010).

## II

En reiteradas ocasiones hemos expresado que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor.[5]

**A. Canon 18 del Código de Ética Profesional, *supra*.**

Reiteradamente hemos expresado que el Canon 18, *supra*, impone a todo abogado el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.[6] Un abogado falta a su deber de diligencia cuando no realiza las gestiones que le fueron encomendadas en el momento oportuno, de la forma adecuada y sin retrasos.[7] En lo pertinente, el Canon 18 expone que

> [s]erá impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
>
> Es deber del abogado defender los intereses del cliente diligentemente, desplegando en

---

[5] In re Colón Hernández, res. el 17 de julio de 2013, 2013 TSPR 91, 188 DPR ___ (2013); In re Peña, Santiago, 185 DPR 764, 778 (2012); In re Birriel Cardona, 184 DPR 301, 306 (2012); In re Muñoz, Morell, 182 DPR 738, 749 (2011); In re Vélez Lugo, 180 DPR 987, 994 (2011); In re Izquierdo Stella, 154 DPR 732, 736 (2001); In re Matos González, 149 DPR 817, 819 (1999); In re Filardi Guzmán, 144 DPR 710, 715 (1998).

[6] In re Ayala Vega, supra; In re Rivera Ramos, 178 DPR 651, 664 (2010); In re Mulero Fernández, 174 DPR 18, 29 (2008).

[7] S. Steidel Figueroa, Ética y Responsabilidad del Abogado, San Juan, Pubs. JTS, 2010, pág. 179. Véase, además, In re Ayala Vega, supra; In re Vilches López, 170 DPR 793, 798 (2007).

cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Hemos expresado que el deber de diligencia profesional del abogado establecido en el Canon 18, *supra*, es del todo incompatible con la desidia, despreocupación y displicencia en el trámite de un caso.[8] De esta forma, este canon impone a los abogados el deber de ser competentes, cuidadosos y diligentes al tramitar los asuntos encomendados y al defender los intereses de sus clientes.[9] Consecuentemente, el letrado que acepta representar a un cliente, pero no hace gestión profesional alguna a esos efectos, comete una violación ética.[10]

## B. Canon 19 del Código de Ética Profesional, *supra*.

Hemos expresado que un abogado no solo debe representar a su cliente con fidelidad, lealtad y diligencia, sino que debe mantenerlo informado de todo asunto importante que surja en el desarrollo del caso cuya atención le ha sido encomendada.[11] Esta comunicación con el cliente sobre fases importantes de los asuntos que

---

[8] In re Ortiz Delgado, res. el 22 de noviembre de 2013, 2013 TSPR 135, 189 DPR ___ (2013); In re Vega Quintana, res. el 29 de mayo de 2013, 2013 TSPR 62, 188 DPR ___ (2013); In re Pujol Thompson, 171 DPR 683, 689 (2007); In re Padilla Pérez, 135 DPR 770, 776 (1994).

[9] In re Ortiz Delgado, supra; In re Soto Charraire, 186 DPR 1019, 1027 (2012); In re Plaud González, 181 DPR 874, 886-887 (2011).

[10] In re Ortiz Delgado, supra; In re Soto Charraire, supra; In re Alonso Santiago, 165 DPR 555, 563 (2005).

[11] In re Nieves Nieves, 181 DPR 25, 40 (2011); In re Cardona Vázquez, 108 DPR 6, 17-18 (1978).

atiende el abogado debe ser directa y efectiva.[12]  El Canon

19 del Código de Ética Profesional, *supra*, establece, en

lo pertinente, lo siguiente

> [e]l abogado debe mantener a su cliente
> siempre informado de todo asunto importante
> que surja en el desarrollo del caso que le
> ha sido encomendado.

Cabe destacar que el deber establecido en el canon

antes citado es independiente del deber de diligencia

establecido en el Canon 18, *supra*.[13]  Esta obligación

comprende mantener informado al cliente de las gestiones

realizadas, consultar las cuestiones que estén dentro del

ámbito discrecional de la representación legal y cumplir

con las instrucciones del cliente.[14]

Así, todo abogado está obligado a informar a sus

clientes sobre las gestiones realizadas para la

tramitación de la causa de acción para la que fue

contratado.[15]  El deber de informar al cliente de las

incidencias de su caso constituye una lesión al citado

canon y al proceso general de impartir justicia.[16]  Dicha

obligación constituye un elemento imprescindible en la

---

[12] *In re Nieves Nieves*, supra; *In re Maduro Classen*, 137 DPR 426, 431-432 (1994).

[13] *In re Hernández González*, res. el 12 de junio de 2013, 2013 TSPR 70, 188 DPR ___ (2013); *In re Muñoz, Morell*, supra, pág. 753; *In re Pujol Thompson*, supra.

[14] *In re Hernández González*, supra; *In re Colón Morera*, 172 DPR 49, 58 (2007).

[15] *In re Nieves Nieves*, supra; *In re García Ortiz*, 176 DPR 123, 129 (2009); *In re Mulero Fernández*, supra, pág. 30; *In re De León Rodríguez*, 173 DPR 80, 89 (2008).

[16] *In re Nieves Nieves*, supra; *In re Rosario*, 116 DPR 462, 466 (1985).

relación fiduciaria que caracteriza el vínculo abogado-cliente.[17]

Por lo anterior, hemos dispuesto que se viola el Canon 19, *supra*, cuando: no se atienden los reclamos de información del cliente; no se le informa del resultado adverso de la gestión encargada; la acción se desestima o se archiva; no se mantiene al cliente al tanto del estado o la situación procesal del caso; o simplemente se niega al cliente información del caso.[18]

## C. Canon 21 del Código de Ética Profesional, *supra.*

El Canon 21, *supra*, tiene el propósito de evitar que los abogados incurran en la representación de intereses encontrados.[19] Esto se debe a que se tiene que preservar una lealtad completa del abogado hacia su cliente y, además, que la representación provista por el abogado esté libre de ataduras personales.[20] Así, este canon establece, en lo pertinente, que

> [e]l abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación

---

[17] *In re Colón Morera*, supra, pág. 57; *In re Mulero Fernández*, supra; *In re García Muñoz*, 170 DPR 780, 789 (2007); *In re Criado Vázquez*, 155 DPR 436, 456 (2001).

[18] *In re Colón Morera*, supra; *In re Acevedo Álvarez*, 143 DPR 293, 298 (1995); *In re Vélez Valentín*, 124 DPR 403, 410 (1989).

[19] *In re Pérez Marrero*, 185 DPR 449, 457 (2012); *In re Toro Cubergé*, 140 DPR 523, 529 (1996).

[20] *In re Pérez Marrero*, supra; *In re Pizarro Colón*, 151 DPR 94, 116 (2000).

>legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
>
>No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
>La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Como podemos observar, el deber de lealtad que promueve este canon consiste en que el abogado no revele confidencias que el cliente le haya comunicado.[21] Por esa razón, se prohíbe que el abogado incurra en representaciones simultáneas o sucesivas adversas.[22] Por lo tanto, este canon prohíbe que un abogado represente a un cliente en una controversia que está sustancialmente relacionada a la de otro cliente actual o anterior, cuando los intereses de ambos son adversos.[23] Sobre este asunto hemos expresado que "el abogado debe cuidar que sus actuaciones no den margen a la más leve sospecha de que

---

[21] In re Pérez Marrero, supra; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 DPR 850, 858 (1995).

[22] Íd.

[23] Íd.

promueve o defiende intereses encontrados con los de su cliente".[24]

**D. Canon 23 del Código de Ética Profesional, *supra*.**

De otra parte, el Canon 23 del Código de Ética Profesional, *supra*, requiere al abogado que dé pronta cuenta del dinero u otros bienes del cliente y no mezclarlos con los propios.[25] En lo pertinente, este canon dispone que

> [l]a naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

Así, la retención de cualquier cantidad de dinero perteneciente a su cliente que esté en posesión del abogado infringe los postulados de este canon.[26] Este Tribunal ya ha resuelto que ni la devolución del dinero retenido al cliente, ni la falta de intención para apropiárselos eximen a un abogado de la sanción disciplinaria correspondiente.[27] El solo hecho de que el letrado retenga fondos pertenecientes a un cliente

---

[24] In re Pérez Marrero, supra, pág. 458; In re Monge García, 173 DPR 379, 384 (2008).

[25] In re Ayala Vega, supra; In re Ríos Ríos, 175 DPR 57, 72-73 (2008).

[26] In re Ayala Vega, supra; In re Colón Hernández, supra; In re Rivera Lozada, 176 DPR 215, 225 (2009).

[27] In re Ayala Vega, supra; In re Colón Hernández, supra; In re Vega Quintana, res. 29 de mayo de 2013, 2013 TSPR 62, 188 DPR ___ (2013); In re Ríos Ríos, supra, pág. 73; In re Rivera Irizarry, 155 DPR 687, 693 (2001).

justifica una sanción disciplinaria.[28]  Esto se debe a que

es un atentado a la relación fiduciaria que el abogado

retenga una suma de dinero que le adelantó su cliente en

concepto de honorarios sin realizar la gestión a la cual

se comprometió.[29]

**E. Canon 35 del Código de Ética Profesional,** *supra.*

Esta Curia ha enfatizado que todo miembro de la

profesión legal debe cumplir con los deberes de

sinceridad, exaltación del honor y dignidad de la

profesión.[30]  Así, los abogados tienen la obligación de

velar por que los procesos legales se lleven de forma

honesta, digna y transparente.[31]  El Canon 35 del Código de

Ética Profesional, *supra,* dispone que

> [l]a conducta de cualquier miembro de la
> profesión legal ante los tribunales para
> con sus representados y en las relaciones
> con sus compañeros debe ser sincera y
> honrada.
>
> No es sincero ni honrado el utilizar medios
> que sean inconsistentes con la verdad ni se
> debe inducir al juzgador a error utilizando
> artificios o una falsa relación de los
> hechos o del derecho.
>
> El abogado debe ajustarse a la sinceridad
> de los hechos al examinar los testigos, al
> redactar afidávits u otros documentos, y al
> presentar causas.

De acuerdo a la disposición anterior, la conducta de

un abogado debe ser sincera y honrada frente a todos y

---

[28] Íd.

[29] In re Ayala Vega, supra; In re Torres Viñals, 180 DPR 236, 246
(2010); In re Ramírez Ferrer, 147 DPR 607, 614 (1999).

[30] In re Nieves Nieves, supra, pág. 41.

[31] In re Pons Fontana, 182 DPR 300, 306 (2011).

ante todo tipo de acto.[32]  Por lo tanto, estas normas se exigen frente a todos: clientes, compañeros abogados y tribunales.[33]

El deber del Canon 35, *supra,* se infringe por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad.[34]  En esencia, no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar.[35]  Por lo tanto, no es defensa que no se haya obrado de mala fe o deliberadamente, ni con intención de engañar, como tampoco lo es que no se le haya causado daño a un tercero.[36]  Lo fundamental es que se falte a los valores de honradez y veracidad, pilares de la profesión legal.[37]

Asimismo, este canon aplica también al proceso investigativo dentro del proceso disciplinario, pues como hemos expresado, este se infringe tanto al negarse a cumplir con los requerimientos de este Tribunal como los del Procurador General para impedir que se descubra la magnitud de los desvíos éticos.[38]

---

[32] In re Iglesias García, 183 DPR 572, 577-578 (2011); In re Pons Fontana, supra; In re Nieves Nieves, supra; In re Collazo Sánchez, 159 DPR 769, 773 (2003).

[33] In re Nieves Nieves, supra.

[34] In re Iglesias García, supra; In re Nieves Nieves, supra; In re Curras Ortiz, 174 DPR 502, 512 (2008).

[35] In re Iglesias García, supra.

[36] In re Iglesias García, supra; In re Nieves Nieves, supra; In re Astacio Caraballo, 149 DPR 790, 799 (1999).

[37] In re Ayala Vega, supra; In re Nieves Nieves, supra, pág. 43; In re Astacio Caraballo, supra.

[38] In re Iglesias García, supra; In re Nieves Nieves, supra; In re Astacio Caraballo, supra.

**F. Canon 38 del Código de Ética Profesional, *supra*.**

El Canon 38 del Código de Ética Profesional, *supra*, enfatiza los valores principales que deben prevalecer en el ejercicio de la profesión legal: la dignidad y el honor.[39]    Este canon, entre otras cosas, dispone lo siguiente

> [e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. ...
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

Como podemos observar, el Canon 38, *supra*, le exige a todo abogado conducirse en forma que exalte la dignidad y el honor de su profesión.  Además, los abogados están obligados a evitar la conducta impropia en su vida profesional y personal, tanto en la realidad como en la apariencia.[40]  Así, en repetidas ocasiones hemos expresado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen".[41]  Ello implica que todo

---

[39] *In re Gordon Menéndez*, 183 DPR 628, 643 (2011).

[40] *In re García Vega*, res. el 1 de noviembre de 2013, 2013 TSPR 128, 189 DPR ___ (2013); *In re Cotto Luna*, 187 DPR 584, 590-591 (2013); *In re Peña, Santiago*, supra, pág. 781.

[41] *In re García Vega*, supra; *In re Fontánez Fontánez*, 181 DPR 407, 417 (2011); *In re Santiago Ríos*, 172 DPR 802, 822 (2007); *In re Quiñones Ayala*, 165 DPR 138, 145 (2005); *In re Silvagnoli Collazo*, 154 DPR 533, 541 (2001); *In re Ortiz Brunet*, 152 DPR 542, 556 (2000).

abogado tiene que desempeñarse con dignidad y honor, y aunque ello conlleve sacrificios personales deberá conducirse en forma digna y honorable, tanto en la vida privada como en el desempeño de su profesión.[42]    Esto responde a la confianza depositada en el abogado como miembro de la profesión legal.[43]

Por lo tanto, la conducta imputada a un abogado en violación al Canon 38, *supra*, ha de ser aquella que realmente le haga indigno de pertenecer a este foro.[44]  A esos fines, se debe analizar si dicha conducta realmente afecta las condiciones morales del abogado.[45]    Esto significa que no se puede concluir que un abogado violó el Canon 38, *supra*, por el simple hecho de incurrir en conducta en violación a los otros Cánones de Ética Profesional, sino por aquella conducta que es contraria a los valores principales de la profesión: la dignidad y el honor.

De otra parte, este Tribunal ha establecido que al determinar la sanción disciplinaria que habrá de imponerse a un abogado podemos tomar en cuenta los siguientes factores: (1) la buena reputación del abogado en la comunidad; (2) el historial previo de este; (3) si esta constituye su primera falta y si ninguna parte ha

---

[42] In re Santiago Ríos, supra.

[43] In re Peña, Santiago, supra; In re Sepúlveda, Casiano, 155 DPR 193, 205 (2001).

[44] In re Santiago Ríos, supra, pág. 824.

[45] Íd.

resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente; y (8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien a tenor con los hechos.[46]

## III

Al licenciado Reyes Coreano se le imputa haber violado los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, *supra*. Veamos si incurrió en las alegadas violaciones.

En el presente caso, quedó demostrado que entre el licenciado Reyes Coreano y el señor Delbrey Rivera existía una relación de abogado-cliente desde 1991. Según surgió de la prueba, en el 2003 el quejoso acudió con su esposa donde el querellado para que los representara en los casos de cobro de dinero y desahucio, pero este les indicó que no podía y los refirió al licenciado Reyes Rivera. No obstante, según consta expresamente en la factura de 20 de enero de 2004, el licenciado Reyes Coreano continuó asesorándolos sobre el caso e incluso reuniéndose con el licenciado Reyes Rivera. En la factura, el querellado hizo un listado de los servicios prestados hasta el momento, entre los que incluyó: diseño de estrategia en los casos de desahucio, reuniones con el licenciado Reyes

---

[46] In re Ayala Vega, supra; In re Hernández González, supra; In re Vázquez Pardo, 185 DPR 1031, 1044 (2012); In re Peña, Santiago, supra, pág. 787; In re Gordon Menéndez, supra, pág. 645; In re Plaud González, supra, págs. 887-888.

Rivera, preparación de mociones y los honorarios del licenciado Reyes Rivera. Al examinar la factura se puede observar que la misma no se refería solo a servicios profesionales prestados a la señora Reyes Torres, como indicó el querellado. En primer lugar, la factura estaba dirigida expresamente al señor Delbrey Rivera y, en segundo lugar, los servicios profesionales que proveyó el querellado estaban relacionados a la demanda que presentó CRV Río Hondo contra el quejoso. Además, en la factura se incluyeron los honorarios del licenciado Reyes Rivera, esto a pesar de que el querellado reafirmó en varias ocasiones que no facturó a nombre de dicho licenciado y que este último prestó sus servicios gratuitamente.

Por otro lado, del expediente surge que el 24 de enero de 2004, las partes firmaron un contrato de servicios profesionales. Del contrato surge que el licenciado Reyes Coreano iba a representar a la pareja en una demanda de daños y perjuicios contra CRV Río Hondo. No se presentó prueba alguna que rebatiera la veracidad de dicho contrato. **Como podemos observar, no hay duda que existía una relación de abogado-cliente entre el licenciado Reyes Coreano y el señor Delbrey Rivera.**

Así las cosas, las actuaciones del licenciado Reyes Coreano demostraron falta de sinceridad, lealtad y al deber de diligencia con el señor Delbrey Rivera. La prueba demostró que a pesar de firmar un contrato de servicios profesionales con el quejoso y cobrarle honorarios de abogado, negó que lo representara y no lo

mantuvo informado sobre el estado del caso, alegando que solo representaba a la señora Reyes Torres.

Ahora bien, el querellado no solo actuó contrario a los Cánones de Ética Profesional antes del proceso disciplinario, sino que su conducta durante el proceso disciplinario también fue contraria a lo establecido en los cánones. Como vimos, el licenciado Reyes Coreano en todo momento sostuvo que no representó al quejoso, que nunca firmó un contrato de servicios profesionales con este y que la factura de 20 de enero de 2004 era por servicios prestados a la señora Reyes Torres. Sus alegaciones no se ajustaron a lo que demostró la prueba presentada ante la Comisionada, por lo tanto, todas estas alegaciones del querellado eran falsas. El licenciado Reyes Coreano demostró pobre diligencia en su gestión profesional y nunca aceptó de forma clara y sincera sus actuaciones erróneas.

A tenor de lo antes expuesto, el licenciado Reyes Coreano infringió los Cánones 18 y 35, *supra*. Ello, porque su conducta se alejó del deber de desempeñarse con diligencia, honradez, sinceridad y lealtad hacía el señor Delbrey Rivera. Según el contrato firmado por ambos, el licenciado Reyes Coreano acordó representar al quejoso, sin embargo, no hizo gestión profesional alguna e incluso luego negó que lo representara. **Además, quedó demostrado que el querellado faltó a la verdad durante el proceso disciplinario al ofrecer versiones que resultaron ser inconsistentes con la prueba presentada.** Así, no importa

si el querellado obró de mala fe o con la intención de engañar, lo cierto es que el querellado faltó al valor de honradez y veracidad tratando de impedir que se descubriera su desvío ético.

Por otro lado, el licenciado Reyes Coreano violó los Cánones 19 y 23, *supra*, ya que al negar que representaba al quejoso no lo mantuvo informado del caso. Además y según la factura de 20 de enero de 2004, el querellado le cobró $8,000 y luego negó que lo representara. Por lo tanto, no le rindió cuenta sobre los honorarios que cobró.

En lo que respecta a la comparecencia del querellado a la vista de divorcio del señor Delbrey Rivera y la señora Reyes Torres, este negó haber ido en representación de su hermano. No obstante, la minuta de dicha vista probó que sí fue a la misma en representación de su hermano. Como mencionáramos, en la vista de divorcio se iba a dilucidar si los suegros del quejoso habían comprado una propiedad con dinero de la Sociedad Legal de Gananciales habida entre el quejoso y su esposa, sin su autorización. Para esa fecha el querellado estaba representando al quejoso en los casos de daños y perjuicios. Por lo tanto, al ir a la vista en representación de su hermano, estaba representando intereses encontrados entre dos clientes simultáneos. Así las cosas y como existía una relación de abogado-cliente entre el quejoso y él, existía un conflicto de interés. Por lo tanto, el licenciado Reyes Coreano infringió el Canon 21, *supra*, que promueve el deber de lealtad hacía

los clientes y prohíbe que los abogados incurran en representaciones adversas simultáneas.

Finalmente, se le imputó al licenciado Reyes Coreano violar el Canon 38, *supra*. Como bien dijimos anteriormente, no se viola este canon por el simple hecho de violar otros cánones. Ahora bien, tenemos que evaluar si la conducta desplegada por el licenciado va contra la dignidad y el honor de la profesión.

Según lo dispuesto por este canon, las actuaciones del licenciado Reyes Coreano atentan contra la dignidad y honor de la profesión. **En primer lugar, el querellado negó representar al quejoso aun cuando había evidencia de un contrato de servicios profesionales y una factura que demostraba que había cobrado honorarios de abogado. En segundo lugar, siendo abogado del quejoso representó a otro cliente en contra de este con intereses adversos. Además, durante todo el proceso disciplinario faltó a la verdad sobre los hechos ocurridos con el señor Delbrey Rivera y nunca aceptó sus actuaciones erróneas. Sus alegaciones en todo momento fueron inconsistentes, confusas y alejadas de la verdad.** Esta conducta impropia del querellado va contra la dignidad y honor de la profesión legal. Por lo tanto, el licenciado Reyes Coreano violó el Canon 38, *supra*.

**IV**

A la luz de lo antes expuesto, concluimos que el licenciado Reyes Coreano infringió los Cánones 18, 19, 21, 23, 35 y 38 del Código de Ética Profesional, *supra*.

Es importante señalar que el licenciado Reyes Coreano cumple con algunos de los factores atenuantes que esta Curia ha establecido para tomar en consideración al momento de determinar la sanción disciplinaria. En primer lugar, el querellado goza de una reputación intachable y labora activamente en su iglesia. Por otro lado, esta constituye la primera falta del licenciado Reyes Coreano y no existen quejas, querellas o reclamaciones pendientes en su contra.

Ahora bien, existe el agravante de que el licenciado Reyes Coreano negó su responsabilidad y sostuvo hechos contradictorios. Tampoco ha mostrado arrepentimiento de clase alguna. En definitiva, con relación a la querella presentada el licenciado Reyes Coreano presentó alegaciones inconsistentes desde el comienzo.

## V

Por los fundamentos expuestos ordenamos la suspensión inmediata del Lcdo. Enrique Reyes Coreano de la práctica de la profesión por el término de un año. El querellado deberá notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver los expedientes y honorarios recibidos por trabajos no rendidos en los casos pendientes. Además, deberá notificar oportunamente de la suspensión que hoy se ordena a los foros judiciales y administrativos. El Alguacil de este Tribunal incautará inmediatamente la obra y el sello notarial del señor Reyes Coreano para el trámite correspondiente por el Director de la Oficina de

Inspección de Notarías. Las gestiones antes descritas deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta Opinión.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Enrique Reyes Coreano          CP-2008-17        Conducta
                                                 Profesional

SENTENCIA

En San Juan, Puerto Rico, a 2 de abril de 2014.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, ordenamos la suspensión inmediata del Lcdo. Enrique Reyes Coreano de la práctica de la profesión por el término de un año. El querellado deberá notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver los expedientes y honorarios recibidos por trabajos no rendidos en los casos pendientes. Además, deberá notificar oportunamente de la suspensión que hoy se ordena a los foros judiciales y administrativos. El Alguacil de este Tribunal incautará inmediatamente la obra y el sello notarial del señor Reyes Coreano para el trámite correspondiente por el Director de la Oficina de Inspección de Notarías. Las gestiones antes descritas deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta Opinión.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo