EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> María M. Charbonier Laureano | 2020 TSPR 66 <br><br> 204 DPR _____ |

Número del Caso:  CP-2016-23
                  (TS-9952)

Fecha:  26 de junio de 2020

Abogado de la querellada:

        Lcdo. Mario A. Rodríguez Torres


Oficina del Procurador General:

        Lcdo. Isaías Sánchez Báez
        Procurador General

        Lcda. Karla Z. Pacheco Álvarez
        Subprocuradora General

        Lcda. Minnie H. Rodríguez López
        Procuradora General Auxiliar

        Lcdo. Joseph Feldstien Del Valle
        Subprocurador General

        Lcda. Lorena Cortés Rivera
        Subprocuradora General


Comisionada Especial:

        Hon. Crisanta González Seda


Materia:  La suspensión de la notaría será efectiva el 22 de
julio de 2020, fecha en que se le notificó al abogado de su
suspensión inmediata.


Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

María M. Charbonier Laureano          CP-2016-23

*PER CURIAM*

En San Juan, Puerto Rico, a 26 de junio de 2020.

Una vez más nos vemos obligados a suspender a un miembro de la profesión legal del ejercicio de la notaría, en esta ocasión, por su infracción a los Arts. 11, 12, 58, 59 y 60 de la Ley Notarial de Puerto Rico, *infra*, y los Cánones 18, 35 y 38 de Ética Profesional, *infra*. Veamos.

I.

La Lcda. María M. Charbonier Laureano (en adelante, "licenciada Charbonier Laureano") fue admitida al ejercicio de la abogacía el 13 de enero de 1992 y al ejercicio de la notaría el 28 de abril de 1994

El 21 de octubre de 2011, la señora Carmen Ramos Feliciano (en adelante, "señora Ramos Feliciano") presentó una queja disciplinaria en contra de la licenciada Charbonier Laureano, en la que alegó que, entre los años 1999 y 2000, compró una propiedad inmueble, entregó el pago por la misma al vendedor y pagó honorarios a la letrada para que ésta gestionara la escritura de compraventa. No obstante, la señora Ramos Feliciano adujo que enfrentó problemas para comunicarse con la licenciada Charbonier Laureano. Tras varios trámites procesales -- incluyendo la realización de una declaratoria de herederos -- la escritura se otorgó finalmente en el año 2006 a nombre de la hija de la promovente, Saidy Andy Fonseca Ramos.

La señora Ramos Feliciano sostuvo que no pudo solicitar la exoneración contributiva al Centro de Recaudación de Ingresos Municipales (CRIM) de los años 1998 al 2007. Por consiguiente, se le estaba cobrando $10,863.62 en contribuciones sobre la propiedad adeudadas para dicho periodo.

En su contestación a la queja, la licenciada Charbonier Laureano adujo que las alegaciones contenidas en la queja eran "falsas, viciosas y malintencionadas". Alegó que fue el señor Manuel Nazario Sánchez (en adelante, "señor Nazario Sánchez"), vendedor de la propiedad en cuestión, quien compareció a su oficina con la promovente para reducir a escrito un contrato de opción de compraventa que habían

pactado verbalmente. Indicó la letrada que el pago por la redacción del contrato y la juramentación por ambas partes le fue hecho por el señor Nazario Sánchez y no la quejosa. Asimismo, negó que la señora Ramos Feliciano le hubiese contratado y pagado por las escrituras de compraventa.

Evaluados los planteamientos de ambas partes, el 23 de marzo de 2012 este Tribunal refirió el asunto a la Oficina de Inspección de Notarías (ODIN) para que realizara su investigación y sometiera el informe correspondiente. Cumpliendo con lo anterior, el 25 de abril de 2013, la ODIN presentó el respectivo *Informe*, en el cual concluyó que la licenciada Charbonier Laureano incurrió en violación de los Arts. 11, 12, 56, 58, 59 y 60 de la Ley Notarial de Puerto Rico, *infra*. Determinó, además, que la promovida violó el Art. 1232 del Código Civil de Puerto Rico, *infra*, al autorizar el traspaso de un inmueble, mediante documento privado.

Según la ODIN, el contenido del contrato de opción en realidad era una transacción de compraventa de un bien inmueble. Es menester señalar que, en su respuesta a una solicitud de documentos adicionales cursada por la ODIN, la licenciada Charbonier Laureano alegó que nunca juramentó el contrato de opción de compraventa y afirmó que en el mismo su firma y sello fueron falsificados.

Conforme a la recomendación de la ODIN, el caso de marras fue referido ante la Oficina del Procurador General, la cual presentó el *Informe* pertinente el 26 de agosto de 2015. En éste, se hizo un resumen del trámite procesal de la queja,

del contenido del *Informe* de la ODIN y se indicó que se acogía en su totalidad lo indicado en dicho informe. Además, dicha dependencia gubernamental indicó que, en aras de atender las alegaciones de la licenciada Charbonier Laureano -- en cuanto a que su sello y firma fueron falsificados --, se realizó una evaluación del documento juramentado por la promovida y se obtuvo un informe pericial que contradijo las alegaciones de la referida abogada. Así pues, la Oficina del Procurador General concluyó que la letrada en cuestión incurrió en violación de los Arts. 11, 12, 56, 58, 59 y 60 de la Ley Notarial de Puerto Rico, *infra*, el Art. 1232 del Código Civil de Puerto Rico, *infra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*.

Oportunamente, la licenciada Charbonier Laureano presento su contestación al referido *Informe*. En esencia: señaló que la queja en su contra estaba prescrita; argumentó que el acuerdo juramentado no era una compraventa, pues las partes estaban imposibilitadas de realizar la misma; y alegó ser víctima de persecución.

Luego de examinar el mencionado *Informe* y la contestación de la licenciada Charbonier Laureano, el 29 de noviembre de 2016 este Tribunal ordenó a la Oficina del Procurador General presentar la correspondiente querella. La misma fue presentada el 23 de diciembre de 2016.

En síntesis, la Oficina del Procurador General presentó los siguientes cargos en contra de la licenciada Charbonier Laureano:

**A. Cargos I al VII**

La Oficina del Procurador General razonó que, al preparar el contrato de opción de compraventa de 19 de febrero de 1999 y autenticar las firmas mediante el Testimonio Núm. 4,193, la referida letrada violó los Arts. 12, 58, 59 y 60 de la Ley Notarial de Puerto Rico, *infra*. Ello, por no haber incluido el testimonio en su Índice Notarial Mensual ni en su Registro de Testimonios.

De otra parte, la mencionada Oficina concluyó que la licenciada Charbonier Laureano también violentó el Art. 56 de la Ley Notarial de Puerto Rico, *infra*, y el Art. 1232 del Código Civil de Puerto Rico, *infra*, al traspasar la titularidad de un bien inmueble mediante un documento privado, pues el alegado contrato de opción era en realidad una compraventa de un bien inmueble.

Asimismo, la Oficina del Procurador General indicó que la querellada violó el Canon 35 de Ética Profesional, *infra*, al afirmar que nunca juramentó el referido contrato de opción de compraventa y que su firma y sello fueron falsificados en dicho documento, siendo tales alegaciones falsas.

**B. Cargos VIII al XI**

De otra parte, según expresa la Oficina del Procurador General, la licenciada Charbonier Laureano también incurrió en violación al Canon 35 de Ética Profesional, *infra*, y a la fe pública notarial contenida en el Art. 2 de la Ley Notarial de Puerto Rico, *infra*, al dar fe de un hecho falso en la Escritura Núm. 19 de Partición de Bienes Hereditarios de 9

de diciembre de 2006. En dicho instrumento, la letrada en cuestión indicó que la parte compradora (la hija de la promovente) le pagó a la parte vendedora el precio convenido de $77,000, cuando en realidad fue la señora Ramos Feliciano quien había entregado dicha suma al señor Nazario Sánchez al momento en que se otorgó el contrato de opción de compraventa en el 1999. La letrada Charbonier Laureano tenía conocimiento de esto, pues fue ella quien tomó juramento a las partes y autenticó sus firmas en dicho contrato.

Además, al autorizar el referido instrumento público, la referida letrada violó el Art. 11 de la Ley Notarial de Puerto Rico, *infra*, pues no notificó al Departamento de Hacienda la Planilla Informativa de Segregación, Agrupación o Traslado de Bienes Inmuebles que se le requería al momento del otorgamiento de la escritura.

Consecuentemente, al no ejercer la notaría de forma competente y capaz, la licenciada Charbonier Laureano también violó el Canon 18 de Ética Profesional.

## C. Cargo XII

Por último, la Oficina del Procurador General concluyó que la conducta desplegada por la referida letrada durante el trámite de la queja de epígrafe es constitutiva de violación al Canon 38 de Ética Profesional, *infra*, el cual impone a las abogadas y abogados el deber de exaltar el honor y la dignidad de la profesión legal y no incurrir en conducta impropia ni en apariencia de la misma.

Recibida la querella, y tras varios trámites procesales no necesarios aquí pormenorizar, el 15 de mayo de 2017 esta Curia nombró a la Hon. María Inés Cartagena como Comisionada Especial. No obstante, ésta posteriormente solicitó ser relevada de atender la querella, por lo que se designó a la licenciada Crisanta González Seda (en adelante, "Comisionada") para sustituirla.

Llamado el caso para la vista de rigor, la Oficina del Procurador General presentó como prueba testifical el testimonio bajo juramento del licenciado Manuel E. Ávila de Jesús, Director de la ODIN, y la señora Ramos Feliciano, promovente de la queja. Por su parte, la licenciada Charbonier Laureano presentó como prueba testifical su propio testimonio y el de la doctora Sheila Mangual Monzón. Esta última es doctora en psicología clínica, quien expresó mayormente su opinión sobre la querellada y mencionó que en los grupos en que comparte con ésta la consideran honesta, responsable con su trabajo y conocedora de las leyes.

Evaluada la prueba presentada ante su consideración, el 29 de abril de 2019 la Comisionada presentó el *Informe* correspondiente. En el mismo, concluyó que la licenciada Charbonier Laureano violó los Arts. 11, 12, 58, 59 y 60 de la Ley Notarial, *infra*, y los Cánones 18, 35 y 38 de Ética Profesional, *infra*. Oportunamente, la referida letrada expreso su posición en cuanto al contenido del mencionado *Informe*.

Es, pues, a la luz de lo antes expuesto que procedemos a disponer del proceso disciplinario ante nuestra consideración.

II.

De entrada, es menester señalar que, la práctica de la notaría en Puerto Rico está regida por las disposiciones de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA secs. 2001 *et seq.*, así como por el Código de Ética Profesional, 4 LPRA Ap. IX. Por tal razón, al ejercer sus funciones la notaria o el notario debe observar ambos estatutos y el contrato entre las partes rigurosamente, pues de otro modo, se expone a las sanciones disciplinarias correspondientes. *In re González Maldonado*, 152 DPR 871 (2002); *In re Vera Vélez*, 148 DPR 1 (1999); *In re Torres Olmeda*, 145 DPR 384 (1998). Con ello en mente, procedemos a examinar el derecho aplicable al caso ante nos.

A.

En esa dirección, y como punto de partida en nuestro análisis, conviene recordar aquí que el Art. 11 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2022 (supl. 2006),[1] según

---

[1] Se cita la disposición vigente al momento de los hechos. No obstante, la misma no ha sufrido cambios sustanciales a la fecha en que se emite esta Opinión *Per Curiam*. Al presente, la misma reza de la siguiente manera:

> En el otorgamiento de escrituras de segregación, agrupación o traslación de dominio será obligación del transmitente o de quien segregue o agrupe cumplimentar y depositar en la oficina del notario autorizante la planilla informativa sobre segregación, agrupación o traslado de bienes inmuebles.
> ...
> Cuando se trate del traslado de un bien inmueble residencial, el notario vendrá obligado a asesorar y advertirle al adquirente, que de ser su intención utilizar el

enmendada, al momento de los hechos que dieron margen al presente proceso disciplinario, establecía que:

> En el otorgamiento de escrituras de segregación, agrupación o traslación de dominio será obligación del transmitente o de quien segregue o agrupe cumplimentar y depositar en la oficina del notario autorizante la Planilla Informativa sobre Segregación, Agrupación o Traslado de Bienes Inmuebles, al momento del otorgamiento o no más tarde de ocho (8) días siguientes al mismo. 4 LPRA sec. 2022 (supl. 2006).

Asimismo, el precitado artículo disponía que en aquellos casos en que se estuviese llevando a cabo el traslado de un bien inmueble residencial, cuyo comprador deseara solicitar la exención contributiva correspondiente a la residencia principal, el notario debía facilitarle a éste la solicitud y, una vez cumplimentada, remitirla al CRIM. *Íd*.

Además, la referida disposición legal imponía a los notarios y notarias la obligación de "remitir durante los primeros diez (10) días de cada mes al Departamento de Hacienda y al Centro de Recaudaciones de Ingresos Municipales las planillas correspondientes a las escrituras otorgadas

---

inmueble como residencia principal, deberá solicitar los beneficios de la exoneración contributiva de contribución sobre la propiedad inmueble, a tenor con la sec. 5001 del Título 21, parte de la ley conocida como 'Ley de Contribución Municipal sobre la Propiedad de 1991'. Esta advertencia, el notario la hará constar en la escritura de traslado de dominio.

...

Será obligación de los notarios remitir mensualmente al Departamento de Hacienda las planillas correspondientes a las escrituras otorgadas ante ellos durante el mes anterior, en o antes del décimo (10) día del mes siguiente al otorgamiento de dichas escrituras. Dicha planilla deberá ser radicada en la forma, manera que establezca el Secretario de Hacienda, mediante reglamento, carta circular, boletín informativo o determinación administrativa de carácter general, incluyendo, pero sin limitarse, a la radicación de las mismas utilizando medios electrónicos. 4 LPRA sec. 2022.

ante ellos durante el mes anterior, al igual que las solicitudes de exención contributiva sobre residencias principales". 4 LPRA sec. 2022 (supl. 2006).

B.

De otra parte, el Art. 12 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2023 (ed. 1994), impone a todo notario o notaria el deber de remitir a la ODIN un índice mensual sobre sus actividades notariales. El mismo ha de presentarse en o antes del décimo día calendario del mes siguiente al mes informado. *Íd*. En dicho informe, el notario o la notaria hace constar "los números de orden [de las escrituras matrices y testimonios autorizados en el mes precedente], los nombres de los comparecientes, la fecha, el objeto del instrumento o del testimonio, la cuantía de cada instrumento y el nombre de los testigos, de haber comparecido alguno". *Íd*.

Sobre este particular, este Tribunal ha expresado que el incumplimiento con el precitado artículo menoscaba la fe pública investida en los notarios. Ello, pues los índices mensuales de actividad notarial garantizan la certeza de los documentos autorizados por los notarios y las notarias, y evitan el riesgo de manipulación y fraude. *In re Cabrera Acosta*, 193 DPR 461 (2015); *In re Santiago Ortiz*, 191 DPR 950 (2014).

C.

Por otro lado, el Art. 58 de la Ley Notarial, 4 LPRA sec. 2093 (ed. 1994), uno que también es necesario discutir en el escenario que nos encontramos, establece que "[l]os

testimonios llevarán una numeración sucesiva y continua y serán encabezados por el número que les corresponda, que será correlativo al de la inscripción en el Registro que más adelante se establece". Mientras tanto, el Art. 60 de la referida ley, 4 LPRA sec. 2095 (ed. 1994), establece la nulidad de todo testimonio que no haya sido incluido en el índice mensual, no lleve la firma del notario autorizante o no se haya inscrito en el Registro de Testimonios.

### D.

De igual forma, es importante mencionar también que el Art. 56 de la Ley Notarial, 4 LPRA sec. 2091 (supl. 1999), prohíbe a los notarios y notarias autorizar testimonios en aquellos casos comprendidos en los incisos (1) al (6) del Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 3453. Entre los actos jurídicos que deben constar en instrumento público, conforme dispone el Art. 1232 del Código Civil, *supra*, se encuentran "[l]os actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles".

Sobre esta prohibición este Tribunal ha expresado que uno de sus fundamentos es que, de ordinario, el notario no asume la responsabilidad por el contenido de los documentos privados cuyas firmas legitime. Art. 56 de la Ley Notarial, supra. *In re Ortiz Medina*, 175 DPR 43 (2008); *In re Colón Ramery*, 138 DPR 793, 799 (1995). Permitir la autorización de un testimonio de autenticidad en los casos enumerados en el Art. 1232 del Código Civil, *supra*, frustraría el objetivo de

dicha disposición, a saber: "garantizar que, al prestar su consentimiento a un contrato sobre bienes inmuebles, los otorgantes conozcan plenamente las consecuencias del negocio que pretenden llevar a cabo". *In re Ortiz Medina*, *supra*, pág. 52.

Es preciso recordar, además, que los negocios sobre bienes inmuebles están sujetos al pago de aranceles, por lo que, "para evitar que el notario se convierta en cómplice de una posible evasión contributiva, la Ley Notarial de Puerto Rico establece que, si ha de intervenir en un contrato de tal naturaleza, sólo podrá hacerlo mediante la autorización de un documento público". *In re Ortiz Medina*, *supra*, págs. 52-53; *In re Feliciano*, 115 DPR 172 (1984); *Lázaro v. Sucn. Toro Cabañas*, 53 DPR 201 (1938).

E.

Por otro lado, y por considerarlo en extremo importante para la correcta disposición del proceso disciplinario ante nuestra consideración, debemos recalcar que el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, exige a todos los miembros de la profesión legal rendir una labor idónea y competente. Si bien este canon menciona esta labor idónea con relación al cliente, este Tribunal ha interpretado reiteradamente que dicha norma ética aplica a la labor de los notarios y notarias. *In re Vargas Velázquez II*, 193 DPR 681

(2015); *In re González Maldonado*, 152 DPR 871 (2000); *In re Martínez Ramírez*, 142 DPR 329 (1997).

Sobre este particular, este Tribunal ha establecido que aquellos abogados o abogadas que practican la notaría están obligados a cumplir con el Código de Ética Profesional y con la legislación pertinente a los documentos que autoriza. *In re Vargas Velázquez II*, *supra*; *In re Vargas Velázquez I*, 190 DPR 730 (2014). Asimismo, esta Curia ha expresado que "el desconocimiento de las normas jurídicas y del ejercicio de la profesión vulneran la naturaleza misma del notariado en nuestra jurisdicción y constituyen una violación al Canon 18 del Código de Ética Profesional". *In re Vargas Velázquez II*, *supra*; *In re Vargas Velázquez I*, *supra*; *In re Ortiz Medina*, 175 DPR 43, 49 (2008).

De otra parte, el Canon 35 de Ética Profesional, 4 LPRA Ap. IX, impone a todos los abogados y abogadas el deber de proceder con integridad, sinceridad y honradez ante los tribunales, para con sus representados y en las relaciones con sus compañeros. Como hemos sentenciado en ocasiones anteriores, este deber se incumple por el mero hecho de faltar a la verdad, sin importar las razones para ello. *In re Pérez Guerrero*, 201 DPR 345 (2018); *In re Vázquez Pardo*, 185 DPR 1031 (2012); *In re Iglesias García*, 183 DPR 572 (2011).

En lo pertinente al caso que nos ocupa, hemos señalado que faltar a la veracidad de los hechos es una de las faltas más graves que puede cometer un notario o notaria. *In re Pagani Padró*, 198 DPR 812 (2017); *In re Montañez Miranda*, 157

DPR 275 (2002); *In re González Maldonado*, 152 DPR 871 (2000).
Por tanto, "dar fe de un hecho falso, independientemente de
si es de forma intencional o no, conlleva una violación al
Canon 35 del Código de Ética Profesional, *supra*". *In re Pagani
Padró*, *supra*; *In re Belén Trujillo*, 184 DPR 793 (2012); *In
re Martínez Almodóvar*, 180 DPR 805 (2011).

Finalmente, el Canon 38 de Ética Profesional, 4 LPRA Ap.
IX, impone a todo abogado y abogada el deber de esforzarse al
máximo en exaltar el honor y dignidad de la profesión legal.
Este deber implica que todo abogado o abogada "debe evitar
hasta la apariencia de conducta profesional impropia". *Íd*.

Como bien hemos expresado anteriormente "'[l]a justicia
debe ser inmaculada, tanto en su realidad interior como en
la percepción externa.... Cuando la conducta que se le imputa
a un abogado demuestra que no se conduce de forma digna y
honorable, viola el citado Canon 38'". *In re Pérez Guerrero*,
*supra*, pág. 358; *In re Gordon Menéndez*, 183 DPR 628 (2011)
(citando In re Pons Fontana, 182 DPR 300, 310 (2011)). Véanse,
además, *In re Pagán Pagán*, 171 DPR 975 (2007); *In re Roldán
González*, 113 DPR 238 (1982). En esa dirección, y en vista
de que los miembros de la clase togada reflejan la imagen de
la profesión, éstos y éstas siempre deben actuar con el más
escrupuloso sentido de responsabilidad que impone la función
social que ejercen. *In re Pérez Guerrero*, *supra*; *In re Gordon
Menéndez*, *supra*; *In re Nieves Nieves*, 181 DPR 25 (2011).

III.

Ya para concluir, es menester señalar también que, en casos como el de autos, al momento de imponer una sanción disciplinaria, este Tribunal debe tomar en consideración los siguientes factores: (1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si la falta en cuestión constituye su primera infracción; (4) si ninguna parte ha resultado perjudicada; (5) la aceptación de la falta y su sincero arrepentimiento; (6) si es una conducta aislada; (6) si medió ánimo de lucro en su actuación; (7) el resarcimiento al cliente; y (8) cualesquier otra consideración, ya sea atenuante o agravante, que surja de los hechos. *In re Medina Torres*, 200 DPR 610 (2018); *In re Otero Calero*, 2018 TSPR 112, 200 DPR 561 (2018); *In re Pagani Padró*, *supra*.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer del proceso disciplinario que nos ocupa.

IV.

Como mencionamos anteriormente, el presente caso fue referido ante una Comisionada Especial quien tuvo la oportunidad de recibir la prueba presentada en el mismo, evaluarla detenidamente, hacer sus determinaciones de hechos y sus conclusiones de derecho. En parte de su informe, la Comisionada Especial designada para atender el mismo, licenciada González Seda, concluyó que la determinación de la ODIN y de la Oficina del Procurador General en cuanto a la violación de los Arts. 11, 12, 58, 59 y 60 de la Ley

Notarial, *supra*, imputada a la licenciada Charbonier Laureano está sostenida por la prueba estipulada y la prueba testifical presentada por las partes. Incluso, y según se señala en el referido documento, parte de las conclusiones a las que se llega en el referido *Informe* fueron aceptadas por la letrada objeto del presente proceso disciplinario, quien varios años después de juramentar el testimonio y autorizar la escritura en cuestión, solicitó que se le permitiera subsanar las omisiones incurridas. Con las conclusiones a las que se llega en el *Informe* rendido por la Comisionada Especial, coincidimos.

Y es que, en efecto, tal como lo ha señalado la Comisionada Especial en su *Informe*, y según se desprende del expediente ante nuestra consideración, no albergamos duda alguna que -- en lo que respecta a la querella de epígrafe -- la licenciada Charbonier Laureano no incluyó la juramentación del contrato entre el señor Nazario Sánchez y la señora Ramos Feliciano aquí en controversia en su Índice Notarial del mes de febrero de 1999, adjudicándole a otra juramentación el número que le hubiese correspondido (4,193). Tampoco registró el referido juramento en su Registro de Testimonios. No hay controversia en cuanto a que, al autorizar la escritura Núm. 19 de 9 de diciembre de 2006, la referida letrada omitió notificar al Departamento de Hacienda la Planilla Informativa de Segregación, Agrupación o Traslado de Bienes Inmuebles que le era requerida. Todo lo anterior

en violación a los Art. 11, 12, 58, 59 y 60 de la Ley Notarial de Puerto Rico, *supra*.

Ahora bien, en cuanto a las violaciones al Art. 56 de la Ley Notarial, supra, y el Art. 1232 del Código Civil, *supra*, imputadas a la licenciada Charbonier Laureano, similar a como lo concluyó la Comisionada Especial designada para atender el proceso disciplinario que nos ocupa, entendemos que las mismas no fueron sostenidas por la prueba desfilada en el presente proceso disciplinario. Del expediente ante nuestra consideración, se desprende que la transacción entre la señora Ramos Feliciano y el señor Nazario Sánchez no era en realidad una compraventa porque el llamado vendedor no era el único dueño de la propiedad, por lo que no podía haber transmisión de un derecho real sobre el inmueble. El señor Nazario Sánchez compareció al otorgamiento del contrato a transmitir un derecho que no tenía sobre una propiedad que pertenecía a una sucesión, que en ese momento no se había declarado quiénes eran sus miembros.[2] El contenido de dicho contrato, aún si se hubiese consignado en escritura pública, nunca hubiese podido inscribirse en el Registro de la Propiedad. No hubo, pues, violación al Art. 56 de la Ley Notarial, *supra*, y el Art. 1232 del Código Civil, *supra*.

De otra parte, en lo relacionado al Canon 18 de Ética Profesional, *supra*, y tal como lo señaló la Comisionada

---

[2] Cabe señalar que la licenciada Charbonier Laureano hizo alusión a este hecho en su testimonio, donde alegó que en ese momento no podía hacer la escritura de compraventa, pues el señor Nazario Sánchez era comunero y la señora Ramos Feliciano era casada y compareció sola.

Especial en su *Informe*, estimamos que cualquier violación a la Ley Notarial, *supra*, constituye una conducta contraria a dicha disposición disciplinaria. Por lo tanto, en la medida en que la prueba ante nos sostiene múltiples violaciones a la Ley Notarial, *supra*, queda claramente establecido que la letrada objeto del presente proceso disciplinario se apartó del deber de cuidado y diligencia que requiere este canon y, en consecuencia, ha violado el mismo.

Por otro lado, en su *Informe* la Comisionada Especial también concluyó que la licenciada Charbonier Laureano faltó a su deber de sinceridad y honradez, ello en violación del Canon 35 de Ética Profesional, *supra*. Tiene razón.

Y es que según se desprende del expediente ante nuestra consideración, es un hecho cierto que la referida letrada estuvo presente, redactó y tomó juramento a la señora Ramos Feliciano y al señor Nazario Sánchez el 19 de febrero de 1999, por lo que le constaba que la entrega de los $77,000 fue hecha por la promovente y no por la hija de ésta. No obstante, en la escritura otorgada en el año 2006, la licenciada Charbonier Laureano incluyó como hecho cierto y dio fe de que la parte vendedora manifestó que recibió la referida suma de dinero de la hija de la quejosa, quien comparece como compradora en la escritura. Además, la Comisionada Especial indica que, aunque la escritura en cuestión establece que fue autorizada el 9 de diciembre de 2006, la misma fue incluida en el informe que rindió la

querellada en el mes de noviembre de 2006, como si realmente hubiese sido autorizada el 9 de noviembre de 2006.

No siendo suficiente lo antes dicho, luego de aceptar en su contestación a la queja que redactó y juramentó el contrato suscrito entre el señor Nazario Sánchez y la señora Ramos Feliciano, la licenciada Charbonier Laureano sostuvo que nunca juramentó dicho contrato y que su firma y sello fueron falsificados. Sobre este particular, se mencionó en el *Informe* de la Comisionada Especial que el 12 de agosto de 2015, el señor Héctor J. Figueroa Ramos, Examinador de Documentos Forenses II adscrito al Instituto de Ciencias Forenses de Puerto Rico, certificó mediante informe que la firma y sello que aparecen en el contrato suscrito por la quejosa y el señor Nazario Sánchez corresponden a la querellada. No obstante, aun cuando existía dicho informe pericial, la referida letrada insistió en su alegación de que su firma y sello habían sido falsificados.

Por ultimo, al igual que lo hizo la Comisionada Especial, concluimos que la licenciada Charbonier Laureano también incurrió en conducta constitutiva de violación al Canon 38 de Ética Profesional, *supra*. En primer lugar, y según se desprende del expediente ante nuestra consideración, la referida letrada testificó que, al momento de pactarse el contrato de opción de compraventa, se encontraba realizando gestiones relativas a la liquidación del caudal relicto de la esposa del señor Nazario Sánchez. Por lo tanto, ésta sabía que el señor Nazario Sánchez no podía transmitir un título

de propiedad a la señora Ramos Feliciano, toda vez que aún no había una declaratoria de herederos. Teniendo conocimiento de esto, la letrada debió informar y orientar a las partes. Ésta no lo hizo.

En segundo lugar, la licenciada Charbonier Laureano tenía conocimiento de que la señora Ramos Feliciano iba a pagar el valor total de la propiedad, a pesar de que en ese momento no se podía inscribir a su nombre. Sin embargo, omitió orientar a la promovente, antes de que ésta firmara el contrato, sobre el pago de las contribuciones de la propiedad que correspondía a la sucesión. Por otro lado, la Comisionada Especial expresó que no se presentó explicación satisfactoria alguna en este procedimiento para que el otorgamiento de la escritura tomara casi siete años desde que se juramentó el contrato entre la señora Ramos Feliciano y el señor Nazario Sánchez.

Para concluir, precisa señalar aquí que la Comisionada Especial atendió ciertas expresiones hechas por la licenciada Charbonier Laureano en contra de la Oficina del Procurador General en su *Contestación a Informe de la Procuradora General en esta Queja* y las que surgen del expediente contra la promovente.[3] Ésta concluyó que tales señalamientos, además

---

[3] Se refirió, en particular, a las siguientes expresiones:

Desde que la licenciada Charbonier Laureano entró a la política activa ha estado expuesta a la promoción de querellas o quejas desde la Oficina de la Procuradora General cada vez que gobierna el partido contrario al que ella milita. Al presente las quejas no han prosperado. De hecho, dos de esas querellas fueron desestimadas por no sostenerse en derecho y los hechos probados y documentos no sostenían de ninguna manera lo imputado. Esto representa el último intento de esta oficina para afectar la práctica profesional de la

de que no fueron probados, no exaltan el honor y la dignidad de la profesión, como exige el Canon 38 de Ética Profesional. Estamos de acuerdo. Tal conducta, sin lugar a dudas, es contraria a lo dispuesto en la normativa deontológica a la que se hace referencia.

En fin, como hemos establecido anteriormente, y a modo de epílogo, -- en lo que respecta al proceso disciplinario ante nuestra consideración --, no se desprende de la prueba desfilada que la licenciada Charbonier Laureano haya incurrido en violación del Art. 56 de la Ley Notarial, *supra*, y el Art. 1232 del Código Civil, *supra*. Ello, pues la transacción entre la señora Ramos Feliciano y el señor Nazario Sánchez no era en realidad de una compraventa, toda vez que este último no era el único dueño de la propiedad, por lo que no podía transmitir un derecho real sobre el inmueble.

Ahora bien, según sostiene la prueba desfilada en este proceso disciplinario, y la normativa aplicable antes discutida, la licenciada Charbonier Laureano, a todas luces, violó los Arts. 11, 12, 58, 59 y 60 de la Ley Notarial, *supra*, pues ésta: no notificó al Departamento de Hacienda la Planilla Informativa de Segregación, Agrupación o Traslado de Bienes Inmuebles, luego de otorgar una escritura de compraventa; no incluyó la juramentación del contrato entre el señor Nazario Sánchez y la señora Ramos Feliciano en su

---

licenciada Charbonier Laureano. *Contestación a Informe de la Oficina de la Procuradora General en esta Queja*, pág. 8.

Índice Notarial del mes de febrero de 1999, adjudicando a otra juramentación el número que le hubiese correspondido (4,193); y no registró el referido juramento en su Registro de Testimonios. Tampoco nos cabe duda de que la licenciada Charbonier Laureano violó los Cánones 18, 35 y 38 de Ética Profesional, *supra*, toda vez que ésta: mostró falta de competencia o conocimiento en el desempeño de sus funciones notariales; faltó a su deber de honestidad tanto en el desempeño de su profesión como en el presente proceso disciplinario; y desplegó una conducta que no exalta el honor y la dignidad de la profesión. <u>Dicha conducta, sin lugar a dudas, debe ser sancionada.</u>

V.

Conforme mencionamos anteriormente, al considerar la sanción a imponerse en el presente caso, debemos tomar en cuenta que la licenciada Charbonier Laureano ha sido objeto de quejas disciplinarias en varias instancias anteriores, siendo censurada por este Tribunal en dos (2) de éstas. Véanse, *In re Charbonier Laureano*, 193 DPR 409 (2015); *In re Charbonier Laureano*, 156 DPR 575 (2002).[4] Por otro lado, es menester señalar que durante este proceso disciplinario la querellada se ha sostenido en que no ha cometido ninguna

---

[4] En *In re Charbonier Laureano*, 156 DPR 575 (2002), la licenciada Carbonier Laureano fue censurada y apercibida por autorizar una declaración jurada previamente impresa sin borrar o tachar del texto y del juramento los nombres de dos personas que no comparecieron ante ella, pero posteriormente firmaron como si hubiese sido en su presencia. En ese caso, este Tribunal expresó que "en vista de que la presente constituye la primera queja o querella radicada contra la mencionada abogada-notario, procede que en esta ocasión únicamente *censuremos* a la referida abogada". (Énfasis en el original) *In re Charbonier Laureano*, *supra*, pág. 579.

falta ética, aunque sí reconoció -- luego de varios años -- haber cometido violaciones a la Ley Notarial, *supra*, las cuales solicitó subsanar.

VI.

Es pues, por todo lo anterior, que coincidimos con las conclusiones de la ODIN, la Oficina del Procurador General y el *Informe* de la Comisionada Especial en cuanto a que la licenciada Charbonier Laureano violó los Arts. 11, 12, 58, 59 y 60 de la Ley Notarial, *supra*, y los Cánones 35 y 38 de Ética Profesional.

En vista de las faltas cometidas, sus antecedentes, así como la conducta desplegada por la referida letrada durante el presente proceso disciplinario, procede su suspensión del ejercicio de la notaría por un término de seis (6) meses.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

María Milagros Charbonier Laureano      CP-2016-23

SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2020.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se suspende inmediatamente a la Lcda. María Milagros Charbonier Laureano del ejercicio de la notaría por un término de seis (6) meses.

Se le ordena al Alguacil de este Tribunal incautar la obra y sello notarial de la licenciada Charbonier Laureano y entregar los mismos al Director de la ODIN para la correspondiente investigación e informe. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por la licenciada Charbonier Laureano durante el periodo en que la fianza estuvo vigente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente y hace constar la siguiente expresión:

¨La Jueza Asociada señora Pabón Charneco disiente del resultado avalado por una Mayoría de este Tribunal. Luego de evaluar cuidadosamente el expediente de autos, entiende que la suspensión del ejercicio de la notaría debería de ser por un término de tres (3) meses porque a la fecha en la que se presentó la Queja habían transcurrido doce (12) años desde que se otorgó la escritura de compraventa en cuestión y del expediente surge que la Lcda. María M. Charbonier Laureano solicitó subsanar los errores señalados por la Oficina de Inspección de Notarías (ODIN)¨.

El Juez Asociado señor Estrella Martínez no intervino. El Juez Asociado señor Kolthoff Caraballo no interviene.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo